## JOSEPH DRURY v. THE TERRITORY OF OKLAHOMA.

### (Filed Feb. 8, 1900.)

1. CRIMINAL LAW—*Principal and Accessory—Distinction Abolished.* By the provisions of our crimes act, all distinction between an accessory before the fact and a principal, and between principals in the first and second degree in cases of felony, are abolished, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid and abet in its commission, though not present, must be indicted, tried and punished as principals.

2. SAME—*Accessories Before and After Fact—Statutory Denomination.* All those persons who at the common law were classed as principals, principals·in the first degree, principals in the second degree, accessories at the fact and accessories before the fact, are, under our statutes, made principals; while those who were classed as accessories after the fact, are, by the terms of the statute, denominated accessories.

3. SAME—*Aide. and Abetter—Principal, When—Indictment—Necessary Charge.* One who was present at the commission of a felony, and was aiding and abetting the one who committed the overt act, was at common law a principal in the second degree, and is under the statute a principal. In charging such offense it is not necessary to allege any facts other than would be necessary in charging the principal who committed the overt act.

4. MURDER—*Indictment—Sufficient Which Charges, What.* An indictment for murder is sufficient which charges that A and B, in and upon one C, feloniously, without authority of law, and with a premeditated design to effect the death of the said C, did make an assault, and the said A, a certain revolving pistol then and there charged with gunpowder and leaden bullet, which he, the said A, then and there held, and then and there, without authority of law, and with a premeditated design to effect the death of the said C, did shoot off and discharge, at and against the said C, thereby giving to him, the said C, then and there with the leaden bullet aforesaid so shot off and discharged as aforesaid, one mortal wound, in and through

Drury v. Territory of Oklahoma.

the head, of which mortal wound, he, the said ,C, then and there
instantly died. And the said B., was then and there feloniously,
without authority of law, and with the premeditated design to
effect the death of the said C, present, aiding and abetting the
murder aforesaid, in manner and form as aforesaid to do, commit
and perpetrate. And the jurors aforesaid, upon their oaths afore-
said, do say that the said A and B, him, the said C, in the manner
and by the means aforesaid, without authority of law, and with
a premeditated design to effect the death of the said C, did kill and
murder; contrary to the form of statutes in such case made
and provided, and against the peace and dignity of the Territory
of Oklahoma. Such indictment charges B as a principal, and not
as an accessory, and the fact that the indictment charges the par-
ticular manner in which B is held as a principal, gives him no
cause to complain, because the indictment is more specific than
the statute requires.

5. VERDICT—*Immaterial Evidence—Same not Objected to.* This court will
not set aside the verdict of a jury on the ground that incompetent
and immaterial evidence was permitted to go to the jury, where
the record shows that such evidence was not objected to by the
defendant, and no motion was made to strike it out.

6. INSTRUCTIONS—*Not Reviewed, When.* Instructions given by the court
and not excepted to by the defendant at the trial, or before the
trial court will not be reviewed on appeal.

7. EVIDENCE—*Objection to—Ground for—Error.* Where objection is made
to the introduction of evidence on some particular ground, which
is not well taken, the court will not treat such objection as general,
and hold that it was error to permit such evidence to go to the
jury, for some reason not stated in the objection.

8. CRIMINAL TRIAL—*Admissions—Witness.* When the prosecution is
seeking to prove admissions made by the defendant tending to
show his guilt, it is not required that the particulars of time, place
and persons present shall be given, before the witness is permitted
to testify to such admissions.

9. EVIDENCE—*Witness—Confession—Error.* Where a witness is called for
the prosecution and asked if the defendant had not made certain
statements in the nature of confessions or admissions to him, and
the witness denies that any such statements were made, it is error
to permit the attorneys for the prosecution to testify that the
witness had stated to them that the defendant had made to the

witness the statements inquired about, and to perm't such attorneys to testify what the witness had told them the admissions and confessions were.

10. INCOMPETENT EVIDENCE—*Criminal Cause—Reversible Error.* Where the trial court has permitted illegal and incompetent evidence to go to the jury, and subsequently withdraws such evidence and directs the jury to disregard it, and give such evidence no consideration, the correct rule for determining whether such action is reversible error is, if the illegal evidence was of such a character as would ordinarily create such prejudice against the defendant as was reasonably calculated to make a fixed impression on the minds of the jury and influence their verdict, and the court, from an examination of the whole case, is unable to say that such evidence did not affect, the verdict, or that the verdict would not probably have been different in any event, then the verdict should be set aside and new trial ordered.

11. MURDER—*Necessary Proof—Defense.* Where one is charged with the crime of murder and it is alleged that another committed the overt act in the perpetration of the crime, it is not sufficient to show that the defendant was present and knew the offense was being committed; the proof must go further and show, beyond a reasonable doubt, that he was participating in the homicide before or at the time of its commission.

12. NEW TRIAL—*Grounds for—Rule Applied.* The evidence in this case examined, and *held*, that the illegal evidence admitted and subsequently withdrawn was of such a damaging and prejudicial character, and the legal and competent evidence of such weak and uncertain character, that the court cannot say that the jury were not probably misled and influenced by the illegal evidence, and new trial should be ordered.

(Syllabus by the Court.)

*Error from the District Court of Garfield County; before John L. McAtee, District Judge.*

*Buckner & Son,* for plaintiff in error.

*Harper S. Cunningham, Attorney General,* for defendant in error.

Opinion of the court by

BURFORD, C. J.: The defendant, Drury, and one Crandall, were tried and convicted for the crime of murder. Drury appeals to this court. The first contention of plaintiff in error is that the court erred in overruling the demurrer to the indictment. The indictment, after the formal parts, charges as follows:

"That John W. Crandall and Joseph Drury, late of said county, on the fourth day of February, in the year of our Lord one thousand eight hundred and ninety-eight, in the said county of Garfield, Territory of Oklahoma, in and upon one John McCoy, then and there being, feloniously, wilfully, of their malice aforethought, without authority of law, and with a premeditated design to effect the death of the said John McCoy, did make an assault; and that the said John W. Crandall, a certain revolving pistol then and there charge and loaded with gunpowder and a leaden bullet, which he, the said John W. Crandall, then and there had and held, at and against the said John McCoy, then and there feloniously, wilfully, purposely, of his malice aforethought, without authority of law, and with a premeditated design to effect the death of the said John McCoy, did shoot off and discharge, and that said John W. Crandall, with the leaden bullet, out of the pistol aforesaid, then and there, by force of the gunpowder aforesaid, by the said John W. Crandall, discharged and shot off as afore aid, at and against the said John McCoy, did then and there feloniously, wilfully, purposely, of his malice aforethought, without authority of law, and with a premeditated design to effect the death of the said John McCoy, strike, penetrate and wound the said John McCoy, in and upon the head of the said John McCoy, giving to him, the said John McCoy, then and there with the leaden bullet aforesaid, so as aforesaid discharged and shot out of the pistol aforesaid, by the said John W. Crandall, at and against the said John

McCoy as aforesaid, one mortal wound, in and through the head of him, the said John McCoy, of which mortal wound the said John McCoy did then and there, to-wit: in the county of Garfield, and Territory of Oklahoma, on the fourth day of February, A. D. 1898, die; and that the aforesaid Joseph Drury then and there feloniously, wilfully, of his malice aforethought, without authority of law, and with a premeditated design to effect the death of the said John McCoy, was present, aiding, helping, abetting, comforting, assisting, maintaining and advising the murder aforesaid, in manner and form aforesaid, to do, commit, and perpetrate. And the jurors aforesaid, upon their oaths aforesaid, do say that the said John W. Crandall and Joseph Drury, him, the said John McCoy, in the manner and by the means aforesaid, feloniously, wilfully purposely, of their malice aforethought, without authority of law, and with a premeditated design to effect the death of the said John McCoy, did kill and murder; contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the Territory of Oklahoma."

It is the contention of counsel for plaintiff in error, that this indictment charges Crandall as a principal in the crime, and Drury as an accessory before the fact, and that as our statute abolishes these distinctions, and requires all persons concerned in the commission of a felony to be indicted, tried and punished as principals, the demurrer should have been sustained.

Counsel are mistaken as to what constituted one an accessory at common law. At common law persons participating in a crime were classed as either principals or accessories, and if the crime was a felony they were alike felons. Principals were such either in the first degree or second degree. Principals in the first degree were those who were the immediate and actual prepetrators of the

act. Principals in the second degree were those who did not, with their own hands, commit the act, but were present aiding and abetting it. The presence alone of the party was not sufficient to constitute him a principal in the second degree, unless he was aiding and abetting the perpetrator. This implied assent to the crime. Accessories were of two classes: Accessories before the fact were those, being absent at the time the felony was committed, yet procured, counseled, or commanded another to commit it; while an accessory after the fact was one who, knowing a felony to have been committed by another, received, comforted, or assisted the felon.

These several distinctions have been abolished by statute in this Territory, except as to accessories after the fact. Section 5087, Statutes Oklahoma, 1893, provides:

"The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, must hereafter be indicted, tried and punished as principals, and no additional facts need be alleged in any indictment against such an accessory than are required in an indictment against his principal."

In the Crimes act, we have the following provisions:

"SEC. 1862. The parties to crimes are classified as first: Principals; and second: Accessories.

"SEC. 1863. All persons concerned in the commission of crime whether it be felony or misdemeanor and whether they directly commit the act constituting the of-

fense, or aid and abet in its commission, though not present, are principals.

"Sec. 1864. All persons who, after the commission of any felony, conceal or aid the offender, with knowledge that he has committed a felony, and with intent that he may avoid or escape from arrest, trial, conviction or punishment, are accessories."

It will be observed that all those who were formerly classed as principals in the first degree, principals in the second degree, and accessories before the fact, are now classed as principals. While those who were classed as accessories after the fact are now denominated "accessorics."

The facts charged in the indictment against Drury would have constituted him a principal in the second degree. It is alleged that Crandall fired the homicidal shot with a premeditated design to effect the death of McCoy, and that Drury was present aiding and abetting him, in the design and act. He was then a principal in the second degree under the common law classification, and a principal under our statute. While there is considerable matter in the indictment that might have been profitably omitted, there is nothing that in any way tends to prejudice the rights of the accused. It, in fact, charges him as a principal. It is true that at common law it would have been principal in the second degree, but under the statute, it is a charge against him as a principal. It was probably not necessary to set out the particular acts so fully; he might have been charged in the same language as Crandall; but the pleader saw fit to set out the facts specifically as to each. The facts pleaded constitute Drury a principal to the murder charged, and he is in no

position to complain that the indictment informed him of the particular facts the Territory relied upon for a conviction. There was no error in overruling the demurrer to the indictment.

The case *Casey v. State*, 49 Neb. 403, cited by counsel for plaintiff in error, is not applicable to the question here under consideration. In that case the indictment specifically charged Casey as an accessory before the fact, and the proof showed he was present at the commission of the crime; and the court held that, under the proof, he was a principal in the first degree, and that he could not be convicted as an acessory. It was also held that the common law distinctions still prevailed in that state, and the case was determined in harmony with the rule at common law.

In the case of *State v. Hessian*, 58 Iowa, 68, it was held, under a statute identical with ours, that one charged as a principal might be convicted as such where the proof showed that he aided and abetted the crime. We have no doubt as to the correctness of this rule, and it is not in conflict with our conclusion in this case.

In *Baxter v. The People*, 3 Gilm. 368, the supreme court of Illinois had under consideration the question whether proof that the accused was present aiding and abetting would sustain an indictment charging him as a principal. The statute of that state is very similar to ours. The court said:

"All are principals, and as such should be indicted and punished. Indeed they must be indicted as principals or not at all, for they are declared by the act to be principals. If they are not to be indicted as principals, the

very object of the law is defeated. If they are to be indicted as accessories, they must be tried and convicted as accessories, and then they could not be tried till after the conviction of the principals. *    * There is no doubt that the pleader may, if he choose, and perhaps it would be advisable to describe the circumstances of the offense as they actually transpired, as it is in an indictment against an accessory before or at the fact, but if the starting part of the indictment be that way, it should conclude as for murder, for that is really the offense of which the party is guilty, if at all."

This case was extensively reviewed by the same court in the later case of *Usselton v. People*, 149 Ill. 612; 36 N. E. 952, and the doctrine theretofore announced was approved. In the latter case one Terrell was charged with the murder of one Sanders, and Usselton and several others were charged in the same indictment with being accessories. They were tried and convicted for murder. The court said:

"It appears by this record that none of the defendants were accessories at common law; and, if guilty at all, it is because they were present at the killing by Terrell, and aided or abetted him. And while the indictment might very properly have alleged that the mortal blow or wound was inflicted by Terrell, or by each and all of the defendants including Terrell, it should have concluded as for murder, that being the offense in respect of which they are by the statute to be deemed principals. If the indictment in this case had thus concluded, that is, that these defendants, in the manner and by the means set out in the indictment, the said William J. Sanders did kill and murder, etc., it cannot be doubted that it would have sufficiently charged the offense."

These cases are both approved in the yet later case of *Fixmer v. People*, 153 Ill. 123. We quote more exten-

sively from these cases for the reason that they are cited
by counsel for plaintiff in error as supporting their con-
tention that the indictment in the case at bar charges the
defendant only as an accessory.

While it is true the indictment contains the averments
which at common law would have constituted the accused
an accessory at the fact or principal in the second de-
gree, the concluding part of the indictment comes
squarely within the rule laid down in the Illinois cases,
and charges the defendant with the crime of murder as
a principal.

The case of *People v. Blenn*, 112 N. Y. 91, cited by plain-
tiff in error, is not in conflict with the decisions of the Ill-
inois courts. In that case it was held, in an able and
lengthy opinion by Justice Peckman, that under the pro-
visions of the New York code, one who was charged as
a principal in a felony could be convicted of the crime
charged, though the proof showed he was absent at the
time the crime was committed, but was counselling and
advising the commission of the acts constituting the
crime.

On examination of the other cases cited in plaintiff in
error's brief, we find no case that holds an indictment of
this character insufficient because it sets out the particu-
lar relations of the defendant to the crime where it also
appears that he is charged as a principal. This the in-
dictment in the case under consideration undoubtedly
does.

It is next contended that the court admitted irrelevant
testimony which was not objected to by the defendant,

and it is insisted that the court should reverse the case for this reason. We know of no rule that requires or even authorizes such proceedings. It appears from the record that the accused was defended by two attorneys, and it is not shown that they were not competent to manage the case, and fully protect the interests of their client, It will be presumed that if the defendant's counsel permitted the Territory to introduce irrelevant and immaterial testimony, without objections on their part, that, they considered such testimony as advantageous to their client and not prejudicial. It is a general rule that an appellate court will not review errors of the trial court, unless proper objections are made and exceptions saved. There may be, and probably are, exceptions to this rule, but the matters here complained of do not come within any known exceptions, and we must decline to consider such objections coming at this late stage of the case.

It is claimed that the court erred in permitting the witness Day to detail a conversation had with the defendant in regard to the purchase of a hog from the deceased, and payment to him of some money. The only objection made to this testimony was that it was too remote. As the transaction occurred the day previous to the homicide, we think the court committed no error in overruling this objection. There was no objection to the relevancy or materiality of the testimony.

The next contention is that the court erred in permitting the witness Lewis Miller to detail conversation had with the defendant in reference to the killing of the deceased, over the objection of the defendant, that the time and place were not fixed. There was no error in this

ruling.   The details of time and place of a conversation
are only required to be given as a prerequisite to giving
the conversation when it is being introduced as the foun-
dation for an impeachment, or as impeaching evidence.
The conversation here offered in evidence was not for
purposes of impeachment, but for the purpose of proving
admissions of the defendant.   The defendant had a right,
on cross-examination, to go fully into details as to time,
place, persons present, the state of witness' recollection,
his relations with and feelings toward defendant, for the
purpose of testing his recollection and affecting his
credit.

The correctness of some of the instructions given by
the court is questioned in the brief of counsel, but we are
unable to find in the record that the instructions were
ever objected to or any exceptions taken to them in the
trial court.   Under such state of the record we must de-
cline to review and pass upon them.

There was a vast amount of immaterial and irrelevant
testimony permitted to go to the jury, some of it objected
to and some not.   The Territory was permitted to prove
that the defendant had, on one occasion, prior to the hom-
icide, made a threat that he would kill one Frank Lulu.
This matter had not been made material or competent in
any manner, and was entirely independent of any matter
connected with the case on trial.   Another witness for
the Territory was permitted to testify, over the objection
of the defendant, that the defendant had made a state-
ment to him that he had at one time killed three men in
Colorado, and the entire circumstances of the killing
were detailed by the witness.   This matter was exceed-

ingly prejudicial to the rights of the defendant, was not competent or material for any purpose, and if not for the subsequent action of the court, would necessarily have required a reversal of this cause. On another occasion, during the trial, the prosecution put a witness on the stand and sought to show by him that the defendant had made certain confessions to the witness regarding the killing of McCoy. The witness denied that the defendant had made any such statements to him, or any confessions of the kind. The witness was then asked by counsel for the prosecution if he had not stated to the county attorney, Hubbell, and Assistant Counsel Strang, that he would testify that defendant had made such confessions, and the witness denied having made such statements. The court then permitted Attorneys Hubbell and Strang each to testify, over defendant's objections, not only that the witness had made statements to them as to what he would swear to, but they were permitted to detail the conversations with the witness, and testified that the witness said to them that the defendant had said to witness that he himself shot McCoy; that he went into the house and saw Crandall and McCoy in an altercation, and thought McCoy was getting the best of Crandall, and that he killed McCoy, and that he had fixed up a story for Mrs. Crandall to tell to the effect that McCoy had raped her.

We know no rule of law under which this class of testimony is ever competent. When the prosecution put the witness on the stand and submitted the questions to him as to defendant's confessions, they did so at their own peril as to his answers. If the witness was hostile, and it was made to appear to the court that he had mis-

led and deceived the counsel for the Territory, and they were taken by surprise by reason of false representations made to them, and testified to facts prejudicial to the Territory, the rule permits the party offering the witness to contradict his testimony by proving a different state of facts by competent and proper evidence; but does not permit proof of facts prejudicial to defendant by hearsay and incompetent evidence of the character introduced in this instance.

Trial courts cannot be too careful in guarding the rights and interests of those on trial for crime. It is better, in case of doubt, to give the prisoner the benefit of the doubt, and the court should never knowingly permit incompetent and prejudicial evidence to go to the jury, which it is clear at the time will have to be withdrawn, and the jury instructed to disregard it. Courts sometimes admit evidence upon a theory that it will be made competent, or that other facts will be shown later which will render such evidence competent. If such theory is not sustained, or if the testimony is not made competent by proof of the proper foundation facts, then the court is compelled to withdraw the evidence from the jury and direct the jury to disregard it. Such failure on the part of the party offering such evidence is generally apparent to the jury, and more frequently results to the detriment of the party who introduced the testimony than to the adverse party. But such is not the case when incompetent evidence is introduced which could in no event be proper for the jury to consider. It has been a question seriously and much discussed as to whether such errors can be cured by a withdrawal of such evidence, and an instruction to the jury to disregard it. In this

case the court, after admitting the evidence referred to, very properly and correctly withdrew it from the jury, and specially directed the attention of the jury to it, and instructed them to disregard it and give it no consideration or weight.

Did this action of the court cure the error of admitting the testimony? The authorities are by no means harmonious.

It is a generally accepted doctrine that error in admitting illegal evidence may be cured by instructions directing the jury to disregard it; but whether such instruction does in fact cure the error is a question that should be determined from the character of the illegal evidence, the extent of it, and its probable effect upon the jury.

The authorities are not in harmony on this question. In quite a large number of civil cases, and in a few criminal cases, the doctrine has been announced that where incompetent evidence is admitted and afterwards withdrawn by the court, and the jury instructed to disregard such evidence, the error of admitting such evidence cannot be complained of; that the courts will assume that the jury obeyed the directions of the court and were not influenced by the illegal evidence. To this effect is the case of *Pennsylvania Co. v. Ray*, 102 U. S. 451, a civil cause in which Mr. Justice Harlan, speaking for the court, states the rule in broadest terms.

This is the extreme view on one side of the question. On the other hand, a number of courts hold that when illegal or incompetent evidence of a prejudicial charac-

ter has gone before the jury, the injury is too deeply fixed in the minds of the jury to be eradicated, and the error cannot be cured by any instruction of the court. This is the other extreme.

According to a number of decisions, the error is not cured unless the court can say affirmatively that the evidence worked no injury to the adverse party; whilst other cases say there must be reason to believe that the evidence improperly influenced the verdict; while in the case of *Jones v. Reus*, 5 Tex. Civ. App., it was held that it must affirmatively appear that the improper evidence did affect the verdict.

We have not cited the cases supporting these different doctrines, but they will be found in Vol. 11, Ency. Pl. & Pr., 307 to 311, where the subject is treated and all the authorities cited.

Neither of the two extremes are consistent with sound reason and good practice. To say that a juror is never prejudiced, and his verdict never affected by illegal or incompetent evidence which the court has permitted to be introduced, is in conflict with human experience and judicial observation; while to say that the jury are in every case prejudiced by such evidence, even though directed to disregard it, is to place entirely too low an estimate upon the intelligence of jurors, and establish a rule of practice which makes it practically impossible for a court to try a criminal case without committing reversible error.

It frequently occurs in the trial of a cause that a witness is asked a proper question, which has for its purpose

the elicitation of material and competent testimony. The witness may give an irresponsive answer and one clearly incompetent and prejudicial.    In such case the court should promptly strike out the answer, direct the jury to disregard it, and, if necessary, rebuke the witness. Such action should be final in such a case, and no reviewing court would think of reversing a case on such grounds.

But in cases where improper prejudicial eidence has been permitted to go to the jury upon a wrong theory, or under a mistake of the court as to the law, or upon the contention by the prosecution that it will later be made competent, by proof of other facts which are not proven, and the evidence thus introduced is of a character to prejudice the jurors against the defendant and to make a fixed impression on the mind, and it is not reasonably probable that the verdict would have been the same had this illegal evidence not been introduced, we think a new trial should be granted.

Without reflecting in any degree upon the intelligence, integrity and honesty of purpose of the average juror, it is a fact which has long been apparent to courts and lawyers, that matters of a prejudical character within the knowledge of a juror and which have found a permanent lodgment in his mind, will inadvertently and unconsciously enter into and affect his verdict. The juror does not possess that trained and disciplined mind which enables him to closely discriminate between that which he is permitted to consider and that which he is not, and is from his inexperience in such matters unable to draw conclusions entirely uninfluenced and unaffected

by the incompetent matters within his knowledge; and these are the reasons that a person having some knowledge of the facts in a case is not permitted to sit as a juror.

In enunciating rules of law based upon the contract and actions of others, courts should exercise and apply that same degree of human judgment, common sense and experience in ordinary affairs, that they direct jurors to bring to their aid in deciding questions of fact.

The correct rule, that based upon sound reason, common experience, and good judgment, we think, is, if the illegal evidence was of such a character as would ordinarily create such prejudice against the defendant as was reasonably calculated to make a fixed impression upon the minds of the jury and influence their verdict, and the court, from an examination of the whole case, is unable to say that such evidence did not probably affect the verdict, or that the verdict would not probably have been different, in any event, then the verdict should be set aside and new trial ordered. This rule leaves the court to exercise some judgment as to the character and effect of the illegal evidence, and the question is not left to be determined by an arbitrary rule without reference to the facts or conditions surrounding the case. This rule is in effect supported by the New York, Wisconsin and Michigan cases, though somewhat differently stated.

The defendant was charged with the crime of murdering McCoy, by aiding and abetting Crandall to kill the deceased by shooting him. There was no allegation that he did the overt act which resulted in McCoy's death, but it was specifically pleaded and proved on the trial that

Crandall shot and killed McCoy with a revolver. In what way or manner did Drury aid and abet Crandall in firing this shot? This is left largely to inference. There is but little evidence tending to implicate him in the killing. It is true he was present in the room when and where McCoy was killed. There is no testimony that he said or did anything at the time to aid or encourage Crandall in the homicidal act. The defendant and Crandall each testified that the defendant made an effort to separate Crandall and McCoy while they were engaged in the struggle. There was evidence that the deceased had been struck on the head with some instrument which produced a severe, contused and lacerated wound, and fractured the skull, which wound had been made before the shot was fired which produced death. Crandall testified that he struck this blow with a stick of stove wood, and the defendant corroborated this statement. They both testified that there had never been any talk or understanding between them about McCoy in any way, and there was no proof of any overt act on the part of Drury, unless it is to be drawn as an inference from his relations to the parties, and his presence in the room at the time of the homicide. There was considerable testimony to the effect that he had been very attentive to Mrs. Crandall, and his friendly and intimate personal relations to her were of such a character that it might be reasonably inferred that they were criminally intimate. But if this were true, was it any reason why he should want McCoy murdered? Only on the theory that he was jealous of McCoy, yet there was no testimony to the effect that he had any knowledge or reason to believe that McCoy had any improper relations with or intentions towards Mrs.

Crandall. We presume that this was the theory of the prosecution, and furnished the motive upon which the jury based their verdict. If this be correct, then we have this anomalous condition of Crandall, the outraged husband, taking the life of McCoy because he had ravished his wife, and Drury, the lover of the ravished woman, aiding and abetting in the murder because he was jealous of McCoy's attention to the outraged woman, yet neither of them had any knowledge of the other's motives or purposes.

Proof of Drury's conduct towards Mrs. Crandall may have been competent to prove a motive, but the evidence did not stop there. Evidence was introduced to prove improper relations of Drury with and conduct toward other women, at other times and places, entirely independent of and in no way connected with the issues to be tried. This was followed by the evidence to the effect that Drury had made a threat to kill one Lula, a neighbor of his, and conceal his connection with the crime so that no one would discover the author of the deed.

The prosecution was next permitted to show that the defendant had made the statement that he had killed three men in Colorado, and the full details of such killing were rehearsed to the jury, and were of such a character, if true, to show an unjustifiable and reckless murder of each of said persons.

This was further followed up by premitting County Attorney Hubbell and Associate Prosecutor Strang to testify that a prisoner in the county jail had made the statement to them that Drury told the prisoner that he

shot McCoy himself, and that he fixed up the story for Mrs. Crandall to tell that McCoy had outraged her.

All of this testimony was clearly incompetent, highly prejudicial, and was calculated to inflame the minds of the jury, and to impress them with the idea that the defendant was a desperate and dangerous man, and likely to commit any crime.

This constant crowding in by the prosecution of such damaging testimony was reasonably ca.culated to create in the mind of the jury such prejudice against the defendant, and produce such fixed and lasting impressions, as would necessarily influence their verdict.

The competent evidence against the defendant is of such a weak and uncertain character, and the incompetent and illegal evidence of such a damaging and prejudical character, that the court cannot safely say that the verdict would have been the same had this illegal evidence not been permitted to go to the jury. Stripped of all its sensational and incompetent environments, and resting solely upon the competent and material testimony in the case, the result might have been materially different.

In order to convict the defendant of the crime charged it was not sufficient to prove that he was present at the commission of the crime, but, in the language of our statute, he must "aid and abet in its commission."

In the case of *Clem v. The State*, 33 Ind. 418, the trial court instructed in part as follows: "So, if the murder was perpetrated with her knowledge and consent, or connivance, she is a principal."

The supreme court said:

"Consent, as a substantive, is a synonym of assent, acquiescence, concurrence, and means an agreement or harmony of opinion or sentiment, and so it would here be popularly understood. It does not imply any manifestation or expression of such concurrence, though this may sometimes be inferred from the connection in which the word is used. There was, however, nothing here to suggest this implication. It could exist without act or utterance and entirely without the knowledge of the actual perpetrator of the homicide, and in that case it would neither aid nor encourage him to do the fatal deed, and short of this there cannot be aiding or abetting in the sense which the law requires to constitute guilt as a principal in the second degree. Under this instruction, the jury would understand that if they believed from the evidence that the prisoner was present when the murder was committed, and was willing or desirous that the bloody deed should be done, they must find her guilty, though that desire had been kept by her a secret and was entirely unknown to him who inflicted the deadly blow. It is plainly not the law that one can be guilty of murder without overt act, who by neither word nor gesture has done anything to contribute to the commission of the homicide, or to assist, encourage, or evince approval of it at or before the fact, and of whom it only appears that he was present and knew of the crime and mentally approved it. The silent thought, however wicked in view of the Searcher of Hearts, is not a crime against our laws, but is left by them to another than a human tribunal."

It is not sufficient to show that the defendant was present and knew the offense was being committed. The proof must go further, and show beyond a reasonable doubt, that he was participating in the homicide before or at the time of its commission. (*Wade v State*, 71 Ind. 535.)

There is a plain distinction between consenting to a crime and "aiding and abetting" in its perpetration. Aiding and abetting are affirmative in their character; consenting may be a mere negative acquiescence, not in any way made known to the principal malefactor. Such consenting, though involving moral turpitude, does not come up to the meaning of the words of the statutes." (*White v. The People*, 81 Ill. 333.)

In the case of *Jones v. The People*, 166 Ill. 264, the supreme court, speaking by Mr. Justice Craig, said:

"There is no controversy from any quarter in regard to the fact that French Jones shot and killed Goskie, but, while Lindsey Jones was present, there is no evidence in the record that he aided, abetted or assisted French Jones in any manner, in killing the deceased. In order to justify the jury in convicting plaintiff in error under the indictment, it should appear, from the evidence, beyond a reasonable doubt, not only that he was present when French Jones killed the deceased, but that he aided, abetted or assisted in the homicide. If plaintiff in error was present and assented to the homicide, but did no act in aid of the killing, he could not be convicted under the indictment."

These authorities are applicable to the case under consideration, except that our statute uses the language "aid and abet" while the Indiana and Illinois statutes read "aid, abet or assist."

In view of the charge contained in the indictment in this cause, specifically charging the defendant with the crime of murder by being accessory at the fact, or principal in the second degree, and the character of the evidence to sustain this particular averment, we are not

sure but the jury was misled and improperly influenced by the testimony which the court withdrew from them and directed them to disregard.

For the reasons stated, the judgment of the district court of Garfield county is reversed, and new trial ordered, and if the defendant is confined in the penitentiary, the warden is directed to deliver him to the sheriff of Garfield county, to be by him confined in the county jail of Garfield county until discharged by competent authority.

Cause reversed at costs of the county of Garfield.

McAtee, J., having presided in the court below, not sitting; all of the other Justices concurring.