## NEWTON HENRY v. STATE.

No. A-1465.   Opinion Filed December 11, 1911.

(119 Pac. 278.)

1.   **WITNESSES—Examination—Cross-Examination—Scope and Extent.** On cross-examination a witness may be asked any question the answer to which would tend to test his means of knowledge, his intelligence, the reliability of his memory, or his bias, prejudice, or interest in the case.

2.   **WITNESSES—Instructions—Credibility.** An instruction is improper which directs a jury that, if they find from the testimony that any witness has wilfully testified falsely as to any material fact in the case, they are at liberty to disregard the testimony of such witness except in so far as the same may be corroborated by other credible evidence; the true rule being that the jury are the exclusive judges of the credibility of witnesses and the weight of the evidence, and the value to be given to their testimony, and they may, if they think proper, reject the whole

of the testimony of such witness, who they may find has wilfully testified falsely to a material fact, or may give it such weight where it has been corroborated by credible evidence as they may deem it entitled to have.

(Syllabus by the Court.)

*Appeal from Superior Court, Oklahoma County; Edward D. Oldfield, Judge.*

Newton Henry was convicted of murder, and appeals. Reversed and remanded.

*Forrest L. Hughes* and *Moman Pruiett,* for appellant.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, P. J. First. Appellant, the deceased, and Lucy. Carrington, the prosecuting witness, were all negroes and were acquainted with each other prior to the date of the homicide. In the city of Oklahoma, in what is called "Packingtown," there is a negro hotel which had been conducted by the prosecuting witness, but which at the time of the homicide was being conducted by appellant. The state proved that on the day of the homicide Charles Lucas was at this hotel for his washing; that while there a difficulty arose in which he lost his life at the hands of appellant. There was only one witness to the homicide besides appellant; that was Lucy Carrington. Her testimony, if believed by the jury, made out a case of murder. When she was on the stand testifying in behalf of the state, for the purpose of showing her interest in the trial and thereby affecting her credibility, counsel for appellant attempted upon cross-examination to prove that said witness was a married woman, was living separate and apart from her husband, and that for three weeks prior to the homicide she had been living with deceased, and occupying a bedroom with him as his wife. All this was objected to by counsel for the state upon the ground that it was not proper cross-examination. This objection was by the court sustained, to which counsel for appellant excepted.

The reason why the Constitution of the state provides that in all criminal cases the accused must be confronted by the wit-

nesses who testify against him is that the defendant may exercise the right of cross-examination. The right of confrontation is given for the purpose of enabling a defendant to test the means of knowledge of a witness, his intelligence, the reliability of his memory, and his bias, prejudice, or interest in the case. The right of proper cross-examination is everywhere recognized as one of the most important and valuable rights possessed by a defendant, and is just as important to him as the right to examine a witness against him in chief is to the state. Necessarily the object of cross-examination is to break or weaken the force of the testimony given by the witness on his examination. From this it follows that any matter which would have a tendency to lessen the credibility of a witness is a proper matter of inquiry on cross-examination. The general rule, therefore, is that anything which tends to show bias or prejudice on the part of the witness or anything which shows his friendship or enmity toward either of the parties is commonly a proper subject of inquiry; so, also, is anything which tends to show that in the circumstances in which he is placed he has a strong temptation to swear, falsely. The situation of the witness in regard to the result of the trial, his interest therein, or inclination for or against either of the parties may be shown. Mr. Wigmore says that the right of cross-examination is "beyond doubt the greatest legal engine ever invented for the discovery of the truth." In the case at bar the witness, Lucy Carrington, was the only eyewitness introduced for the state. It was principally on her testimony that the conviction of appellant was obtained. If it was true that she had abandoned her husband and was living with deceased as his wife, this fact would have a strong tendency to indicate bias on her part in favor of the deceased, and was therefore a proper subject of inquiry on behalf of appellant. There was error in the action of the court in refusing to allow this inquiry to be made.

Second. Upon the trial of the cause, among other things, the court instructed the jury as follows:

"* * * The court instructs you that, if you believe that any witness has wilfully testified falsely as to any material fact,

you are at liberty to disregard the testimony of such witness except in so far as the same may be corroborated by other credible evidence."

In the case of *Charles Hast v. Territory*, 5 Okla. Cr. 162, 114 Pac. 261, a conviction was affirmed where an instruction similar to the above had been given; but in that case no exceptions were reserved to the instruction and the attention of the court was not directly called to it. But, even if this had been done, the conviction would have been sustained, regardless of this instruction, upon the ground of harmless error, because the facts stated in that opinion clearly show that the guilt of Hast was conclusively shown by testimony other than that of the prosecuting witness. This case presents an entirely different question. Here the jury could not legally have convicted appellant, unless they had given full faith and credit to the testimony of Lucy Carrington. This instruction is open to the objection that it might have created the impression upon the minds of the jurors that although they may have found that Lucy Carrington had testified falsely to any material fact in the case, yet if they further found that her testimony was corroborated by other credible evidence, they would be forced to accept and act upon it. In a close case like this we do not think that the above instruction should be given. The better and safer plan would have been to instruct the jury as follows:

If you believe from the evidence that any witness who has testified in this case has knowingly and corruptly sworn falsely to any material fact, then you may, if you think proper, reject the whole of the testimony of such witness, or you may give such weight to the testimony of such witness on other points as you may deem it entitled to have. You are the sole judges of the credibility of the witnesses and the weight and value to be given to their testimony.

See *Coleman v. State, infra,* 118 Pac. 594. Under the evidence in this case we can well see how the jury may have been misled to the injury of appellant by the errors above pointed out, and although it is true that appellant is only a poor, ignorant negro, and is dependent upon the charity of his attorneys for his

defense, yet he is entitled to and will receive at the hands of this court the same consideration as though he were the wealthiest and most influential man in the state.

The judgment of the lower court is therefore reversed, and the cause is remanded for a new tryial.

ARMSTRONG and DOYLE, JJ., concur.