James Clinton BYRNE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–78–601.

Court of Criminal Appeals of Oklahoma.

Dec. 12, 1980.

Rehearing Denied Jan. 13, 1981.

Kermit V. Jones, Paul Ferguson, Edmond, for appellant.

Jan Eric Cartwright, Atty. Gen., David W. Lee, Chief, Crim. Div., Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

The crux of this decision turns on this Court's interpretation of the latitude granted the prosecutor both in conducting cross—examination and delivering closing argument. The alleged misconduct occurred in both stages of this bifurcated trial.

Appellant, James Clinton Byrne, was convicted of Knowingly Concealing Stolen Property, After Former Conviction of a Felony, in the District Court of Tulsa County, Case No. CRF–77–2611, pursuant to 21 O.S. 1971, § 1713, and Laws 1976, Ch. 94, § 1, now 21 O.S.Supp. 1980, § 51, as amended by Laws, 1978, Ch. 281, § 1. The District Court instructed according to § 51(A) of that Title, thereby avoiding § 51(B), which was held unconstitutional in *Thigpen v. State*, Okl.Cr., 571 P.2d 467 (1977). The jury assessed punishment at the maximum of ten (10) years' imprisonment.

On September 27, 1977, the Muskogee, Oklahoma, home of Mr. and Mrs. Kenneth Meyer was burglarized of certain coins, jewelry, silverware, and pistols. In an attempt to recover the stolen property, Mr. Meyer phoned the Coin Investment Center, in Tulsa, Oklahoma, on September 28, and was advised by the owner that property similar to the coins and jewelry described by the victim had been secured by the Coin Investment Center. In fact, the Coin Investment Center had bought items similar to these described from the appellant before the Meyer robbery and again on September 28 and 30.

On September 30, 1977, after having sold additional coins to the Coin Investment Center, the appellant was arrested in his home where the following additional items were seized, absent a search warrant: A twenty dollar gold American St. Godins, coin, found beneath a living room chair; a 1942 BU Walking Liberty silver half dollar, found in the bedroom; and a gold ring, taken from the appellant's pants pocket.

For the defense, a witness stated that he had seen the appellant purchase a bagful of coins in late September of 1977, at a Tulsa doughnut shop. The import of this testimony was that the appellant had bought the property unaware that it had been stolen.

Five errors have been raised on appeal, the first of which will be discussed last, after treatment of the remaining four in order.

## I

■ In his second assignment of error, the appellant argues that the prosecutor's attempt to define the term "beyond a reasonable doubt" during voir dire requires reversal. Although it is error for the State's attorney to attempt to define this term, *Williams v. State*, Okl.Cr., 572 P.2d 257 (1977), the prosecutor is not prohibited from making *any* reference to the term, *Megett v. State*, Okl.Cr., 599 P.2d 1110 (1979). [Emphasis added]

The same issue was addressed by this Court in *Wald v. State*, Okl.Cr., 513 P.2d 330 (1973), and we found not only that the prosecutor's comment did not constitute an attempted definition, but also that the court's admonition cured any misconception. The remarks by the prosecutor in this case are much like those in *Wald*, and the trial court gave a similar admonition. There was no error.

## II

■ In his third proposition, it is the appellant's contention that the information lacked the certainty required to give him notice of the nature of the offense, or to allow him to defend himself against a subsequent prosecution for the same offense.[1] The appellant asserts, for the first time on appeal, that the words "various coins and earrings" failed to meet the standard of

sufficiency. There had been no motion to quash or demurrer to the information. Once a defendant pleads to an information and goes to trial, he has waived his right to attack the sufficiency of the information on appeal. *Laughton v. State*, Okl.Cr., 558 P.2d 1171 (1977). However, it is the appellant's contention that he is permitted to raise this issue for the first time on appeal, citing *Chandler v. State*, 96 Okl.Cr. 344, 255 P.2d 299 (1953). The ruling in that case, however, permitted the initial raising of an inadequate information on appeal only when said information "wholly fails to state facts constituting a crime within the jurisdiction of the trial court." *Chandler*, supra, at 299. It is apparent that the present information is not one warranting application of the rule in *Chandler*. The appellant has failed to preserve this issue for appeal.

■ A problem remains, nonetheless, because items other than coins and earrings were stolen from Mr. Meyer; and one of those, a gold ring, was found in the appellant's possession. In any event, all of the items were fruits of the same burglary, and it may be logically assumed that the intent of the information was to charge the appellant for his role in receiving those fruits. The appellant contends that the evidence of his possession of the ring should have been excluded under the exclusionary rule on other crimes. However, a more logical approach, one which would both fulfill the intent of the original prosecution and protect the rights of the appellant, would be to allow the evidence of the other items into trial, but place a bar on further prosecution of the appellant in connection with knowingly concealing the fruits of the burglary of Mr. Meyer.

This Court has recently used this reasoning to reach a similar conclusion in *Chaney v. State*, Okl.Cr., 612 P.2d 269 (1980). In that case, the defendant was charged with

---

1. The information alleged that the appellant: [D]id unlawfully, feloniously, wilfully and knowingly conceal from KENNETH and ELAINE MEYER, certain personal property of value, to wit: various coins and earrings, that had prior thereto on the 27th day of September, 1977, been stolen from the said

KENNETH and ELAINE MEYER, the said defendant knowing or having reasonable cause to believe that said property was stolen did then and there unlawfully conceal and withhold said property from the owner thereof, with the felonious intent to deprive said owner thereof, . . .

kidnapping and murdering two women in four separate cases. The cases were to be tried separately. During the first murder trial, evidence concerning the second victim was admitted. In describing the State's action, the opinion reads:

... for the purpose of bringing this defendant to trial, it claims that the two murders were separate and distinct crimes; but for the purpose of introducing evidence in this trial, it claims that the two murders were inseparable parts of a single criminal episode ...

To remedy the injustice, this Court held that the State was estopped from prosecuting the second murder charge and the two kidnapping charges.

While *Chaney* is distinguishable from the present case in that no additional charges were pending against the appellant at the time of this trial, the distinction does not nullify the purpose which the opinion serves. The same reasoning should apply.

### III

▮ Because the trial court did not admonish the jury to do otherwise, the appellant alleges that the jury was improperly allowed to consider references to State's Exhibit No. 3, which had been excluded from evidence, as a result of an in–camera exclusionary hearing. The trial court did not admonish the jury to disregard the references to Exhibit 3, which were made during direct examination of the State's witness, Mr. Meyer.

Not only did appellant waive any error, through failure to request an admonition, *Lancaster v. State*, Okl.Cr., 541 P.2d 1343 (1975), but the testimony, which preceded its exclusion from evidence, did not constitute reversible error. *Glasgow v. State*, Okl.Cr., 572 P.2d 290 (1977).

According to the appellant, the court is required to admonish the jury even in the absence of a timely request to do so. *Drury v. Territory*, 9 Okl. 398, 60 P. 101 (1900) at page 105. However, our examination of *Drury* reveals that, while the opinion commended a judge for admonishing the jury and withdrawing evidence on his own mo-

tion, it did not indicate that trial judges were required to do so.

▮ The State correctly asserts that the appellant should have entered á motion to suppress this evidence before trial. *Sanders v. State*, Okl.Cr., 287 P.2d 458 (1955). We note, however, that such a motion is not a prerequisite to challenging evidence during the course of the trial; and, furthermore, it is not clear that appellant was even aware of the possible illegality before trial, thus his duty to attempt to suppress would have been nonexistent.

### IV

▮ In his fifth assignment of error, the appellant contends that the State failed to prove beyond a reasonable doubt that the appellant knew the property was stolen at the time he received it. However, the 1961 amendment to § 1713 of Title 21 indicates that, to be in violation of § 1713, one need not have actual knowledge that the property is stolen, but must merely have reasonable cause to believe that it is stolen. Laws 1961, p. 234, § 1, now 21 O.S. 1971, § 1713; *Richardson v. State*, Okl.Cr., 545 P.2d 1292 (1976). The evidence presented by the State was sufficient to prove to the jury beyond a reasonable doubt that the appellant had reasonable cause to believe the items were stolen.

### V

Finally, we address the allegation that the prosecutor's conduct during trial was calculated to, and did in fact, prejudice the jury, denying the appellant a fair trial. The conduct in question is challenged in four distinct occurrences during trial.

### A

▮ First, it is argued that the prosecutor exceeded the bounds of proper, closing argument in commenting on evidence revealed during direct examination of Officer Webb. Defense counsel's objection to the particular line of questioning during the witness's testimony was overruled; however, he should have entered a timely objec-

tion and request for admonition to the jury during the closing argument. In not doing so, he failed to preserve this issue for appeal. *Shelton v. State*, Okl.Cr., 583 P.2d 1107 (1978).

## B

■ Secondly, it is urged by appellant that the prosecutor improperly referred to appellant's interest in numismatic magazines, which publications include the names and addresses of members of a certain coin collection organization, as the prosecutor pointed out. Appellant argues that the State introduced this evidence to implicate that the appellant intended to commit additional crimes to the one for which he was on trial. Generally, evidence of other crimes is not admissible on the issue of defendant's guilt of the present charge. *State v. Rule*, 11 Okl.Cr. 237, 144 P. 807 (1914). Nevertheless, this Court has held that "implication of another crime *which is obvious only to defense counsel*" is not inadmissible as evidence of other crimes. *Burks v. State*, Okl. Cr., 568 P.2d 322 (1977) at page 324. [Emphasis added]. The distinction, however, is that the implication here could have been obvious to both parties and to the jury.

■ Upon reading the transcript, we have found references to the numismatic magazines three times: during direct examination of John Davis, and also of John McCalister, and during closing argument by the prosecutor. While the State argues that the failure of the appellant to object during the two direct examinations constituted a waiver of this alleged error, in that the closing statements were legitimate comments on the evidence, we are compelled to disagree. It is true that the testimony of the two witnesses was admitted without objection, *and* it is also true that no objectionable statements were made by these two witnesses, who testified that the appellant had purchased numismatic publications both before and after the September 27 robbery. Nevertheless, the evidence assumes damaging significance when the State's attorney, in closing, uses it to clearly imply that the appellant was contemplating future crimes and was searching the magazines for the names and addresses of future victims:

> The other thing significant ... is that Mr. Byrne ... has this fervent interest in the trade journals ... this paper ... lists the new members ... Remember, it's important here that that magazine is issued—I forgot whether it's a monthly circulation or bi–monthly or weekly .... But, Mr. Davis testified that there has to be certain criteria to join and be a subscriber too. Why? To police their own organization and I hear no mention, by the way[,] of evidence in this case that James Clinton Rocky Byrne is a member or subscriber to that magazine. But, what does he want? The back issues because the back issues contain the new subscribers, in case we can what? Anyone can find out the names and addresses of those people who are involved in the coin collection business or vocation or hobby. Very valuable thing to have, wouldn't you think, under the evidence? Very valuable thing to have.

Had he limited his inferences to the appellant's possible use of these publications to the crime charged, his argumentation would have been legitimate. But his obvious speculation regarding the appellant's plan to commit crimes subsequent to the one charged was irrelevant and beyond the scope of fair argumentation. The latitude and discretion which this Court has used as its standard on appeal was abused. *Wright v. State*, Okl.Cr., 531 P.2d 696 (1975); and, *Reeves v. State*, Okl.Cr., 601 P.2d 113 (1979).

## C

■ As his third allegation of improper conduct, the appellant cites the badgering of defense witness Marlene. Byrne by the State's attorney during cross–examination. In response, the State indicates that this was merely an attempt by the prosecutor to elicit responsive answers from this witness. The questions and comments addressed to this witness concerned her "kicking a certain gold coin under" a chair and also indi-

rectly referred to prior convictions of the appellant.

The appellant's wife had testified, on direct, that she had noticed two gold coins on the end table as she was leaving for work. Instead of taking time to put them away, she threw them under a chair. On cross–examination, at least four times, the prosecutor referred to the witness as hurrying off to work "and kicking coins under the table." Additionally, the State's attorney mentioned that the appellant gets up and goes about his way while the witness goes to her "legitimate job." Defense counsel's objection to this last comment was overruled, and then the prosecutor said, "You're not arguing about the word legitimate, are you?" The court then said that he thought that the district attorney "[knew] better," after which the district attorney apologized.

Subtle references to prior convictions of the appellant were also made by the prosecutor, as when he said to Mrs. Byrne, "Probably back as early as 1967, 1968 he was involved in coins, wasn't he?" The first objection to this statement was overruled, but when the State persisted with, "Where did he receive his training in coins?" the court sustained the objection.

This Court has held that any question may be posed during cross–examination which tests the witness's means of knowledge; intelligence; reliability; bias, prejudice or interest in the outcome of the case. *Henry v. State*, 6 Okl.Cr. 430, 119 P. 278 (1911). Although objections to the remarks were sustained, this Court will not ignore the fact that the tenor of the prosecutor's behavior, as a whole, reflects a bad faith attempt to discredit this witness and to use seemingly offhand remarks to imply former crimes of the appellant.

### D

The fourth instance of misconduct concerns remarks made in the punishment phase of the trial, which the appellant claims aggravated his sentence. The following comment by the district attorney appears in the record: "Isn't it a fact that since this has been going on here recently you've been tearing up the south side with some of the burglaries?"

The appellant was not charged with burglary, and there had been no evidence directly linking him to a burglary. "It is highly impermissible for a prosecutor to go outside the record for the purpose of appealing to the passions and prejudices of the jury." *Bryant v. State*, Okl.Cr., 585 P.2d 377 (1978). This statement amounted to an expression of the prosecutor's private opinion of guilt and implied that he had knowledge detrimental to the appellant, which would have come out if the appellant had testified further. Both of the foregoing actions were improper. *Manuel v. State*, Okl.Cr., 541 P.2d 233 (1975).

The record also reflects the following statement by the prosecution: "You had your opportunity to be candid and prove all this . . ."

It is obvious to this Court that the reference to the appellant's "opportunity to be candid" is in direct contravention of his constitutional right to remain silent. U.S. Const. Amend. V, and Oklahoma Constitution, Art. 2, § 21. This Court has held that a comment on the failure of the defendant to present *any* evidence to refute the State's cases is not a comment on his failure to testify. *Johnson v. State*, Okl.Cr., 478 P.2d 969 (1970); and, *Ziegler v. State*, Okl. Cr., 610 P.2d 251 (1980). However, we have also held that a comment which clearly draws attention to the appellant's exercise of his right against self–incrimination is error. *Sands v. State*, Okl.Cr., 542 P.2d 217 (1975).

On the basis of this misconduct, which occurred in the second half of the trial, and therefore clearly could have aggravated the length of the sentence, which was the maximum appellant could have received, and also keeping in mind the two errors discussed previously, this Court finds that prosecutorial misconduct sufficiently prejudiced this appellant to that the result was an excessive punishment. It is for this reason that the judgment is affirmed and modified from ten (10) years to five (5) years.

CORNISH, P. J., concurs in results.

BUSSEY, J., concurs in part and dissents in part.

BUSSEY, Judge, concurring in part and dissenting in part:

While I agree that the judgment and sentence should be affirmed, my examination of the record leads me to conclude that, absent the errors complained of, in light of the overwhelming evidence of the appellant's guilt, and his extensive criminal record, the jury would have imposed the same sentence.

The judgment and sentence of ten (10) years' imprisonment for the crime of Knowingly Concealing Stolen Property After Former Conviction of a Felony should be affirmed.