**Terry Eugene BENNETT, and James Lee Livingston, Appellants,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–75–356.**

Court of Criminal Appeals of Oklahoma.

Feb. 18, 1976.

**660**

Don Anderson, Public Defender, for appellants.

Terry Eugene Bennett, pro se.

James Lee Livingston, pro se.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Joe Mark Elkouri, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellants, Terry Eugene Bennett and James Lee Livingston, hereinafter referred to as defendants, were charged, tried before a jury and convicted in the District Court, Oklahoma County, Case No. CRF–74–3025, for the offense of Robbery With Firearms, in violation of 21 O.S., § 801. They were sentenced to a term of Two Hundred and Fifty (250) years each in the State penitentiary, and from said judgments and sentences a timely appeal has been perfected to this Court.

The first witness for the State was Juanita Dryden who testified that on September 4, 1974, she worked at Dryden's Grocery. and Market at 1917 S. May in Oklahoma City. A few minutes before 6:00 that evening she was working in the store office when two Negro males, whom she identified as the defendants, entered. She testified that Livingston carried a

sawed-off shotgun and threatened to "blast her head off" if she moved. She further testified that Bennett pointed a pistol at her and demanded her money. She gave him about $250.00 from her cash drawer. At this point, she called out to her husband over the intercom and Bennett fired the pistol into the store office. She testified that as her husband and son came into the store from the rear, Bennett fired three more shots at them.

The next witness for the State was Michael Wayne Williams who testified that he was a former Oklahoma City Policeman and that he now worked for his mother-in-law and father-in-law, the Drydens. He said that at about 5:45 p. m. defendant Bennett entered the store, purchased a small item with food stamps, and left. He testified that shortly thereafter, both defendants entered the store, this time with defendant Bennett carrying a pistol and defendant Livingston carrying a sawed-off shotgun. There were a number of customers in the store. Williams stated that Livingston went to the cashier's cage and Bennett confronted Williams at the cash register. The men then changed positions and Bennett went to the store office. The witness stated he saw his mother-in-law hand something to Bennett who then fired into the cashier's cage. Bennett then returned to his original position in front of Williams and fired his pistol so closely to Williams that he felt the powder burn his face. As the witness' father-in-law and brother-in-law emerged from the rear of the store, Bennett fired two more shots at them.

The witness testified that as the men left the store he took a .30 caliber military carbine belonging to him and went outside where he saw defendant Bennett getting into the passenger side of a white Cadillac. He stated that Bennett fired once at him and that he then began shooting at the Cadillac. He suspected that he had hit the driver in the hand and as the car pulled out of the lot he shot about 15 more times, breaking out the rear glass. The car turned north on May Avenue and the witness then called the police. Williams discovered a sawed-off shotgun in the parking lot after the Cadillac left, but did not move it.

The State's next witness was Terry Lynn Dryden who testified he was working in his parents' store on September 4, 1974, at about 6:00 p. m. He stated he entered the front of the store where a man whom he identified as defendant Livingston held a shotgun on him and threatened to "blow his head off." He stated that he ducked behind a counter and heard shots fired but never got a good look at the other man in the store.

Officer Larry Wickline of the Oklahoma City Police Department testified that he responded to a call from the dispatcher at about 6:00 p. m. on September 4, 1974, and went to Dryden's Market. There he found a shotgun in the parking lot and empty .30 caliber carbine shells nearby. He also found two spent .22 caliber cartridges inside the store. He further testified that he observed powder burns on the face of Michael Williams.

George Johnson testified he was an officer with the Oklahoma City Police Department on September 4, 1974, when he heard a police radiocast concerning the robbery of Dryden's Market. He proceeded to May Avenue and I–40 where he observed a white Cadillac with bullet holes in the windshield turn onto I–40. He testified that he gave pursuit, stopped the car and arrested the occupants who he identified as defendants. He testified that a search of the car disclosed two double ought buck and 12 gauge shotgun shells on the person of defendant Livingston and that Livingston had a fresh wound in his hand. A search of defendant Bennett produced $243.00 in cash.

Gaylord Fisher testified he was employed by the Oklahoma City Police Department in its Crime Lab on September 4, 1974. He testified to taking numerous pictures of the Cadillac, the grocery store and the weapons found in various locations.

Lastly, Ray Lamberts testified he was employed by the Oklahoma Crime Bureau and that he was so employed in September of 1974. He stated that he had test-fired the shotgun and pistol and compared the firing pin markings with those of the spent cartridges found around the grocery store. In his opinion the spent cartridges were fired from the weapons which had been received into evidence.

No evidence was offered by either defendant.

The memorandum brief of the public defender appointed to represent defendants at trial in this case has been supplemented by four pro se documents. Of these, appellee has responded to three; the fourth document filed pro se by defendants is a reply to the appellee's response.

■ Defendant Livingston raised several points, some of which are moot. He first objected to the filing of the appeal without the transcript, which had not yet been completed by the court reporter. The transcript was subsequently filed and defendants had use of a copy for preparation of their appeal, therefore, this assignment of error is moot.

■ Defendant Livingston later objected to sharing a copy of the transcript with defendant Bennett, however, inasmuch as they have combined their appeal, were in the same prison, and have quoted extensively from the record in their documents we find no prejudice has resulted from the sharing of the record.

■ Additionally, defendant Livingston has alleged that he has been denied effective assistance of counsel on appeal. At the trial of this case both defendants were represented by an assistant public defender in Oklahoma County. Following their convictions he perfected an appeal to this Court; however, he petitioned the Court for leave to withdraw on the grounds that the appeal was frivolous. A memorandum brief raising two possible arguments accompanied the motion.

Defendant Livingston contends that under the holding of *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), this procedure followed by counsel effectively denies him of counsel. We need only note that defendants' counsel has filed the memorandum brief required by *Anders,* raising two points and citing authority, and that in addition defendants have been allowed to file a number of pro se supplemental instruments. Accordingly, we find this contention to be without merit.

■ Defendants' counsel in his brief alleges insufficiency of evidence to support a verdict of guilty. The evidence against the defendants in this case is overwhelming. Even if it were not so great, this Court has often held that where there is competent evidence in the record from which the jury could reasonably make a determination of guilt or innocence, such finding will not be overturned by this Court on the grounds of insufficiency of the evidence. See, for example, *Pershica v. State*, Okl. Cr., 525 P.2d 1374 (1974); *Birdshead v. State*, Okl.Cr., 515 P.2d 1400 (1973); *Tilley v. State*, Okl.Cr., 511 P.2d 586 (1973), and, *Jones v. State*, Okl.Cr., 468 P.2d 805 (1970).

■ An assignment of error brought by defendants themselves is that the court erred in admitting certain exhibits and photographs into evidence. These items are not included in the record. However, it is evident from a reading of the transcript that these photographs depict only the weapons found, the automobile defendants were in at the time of the arrest, and the interior of the market. Other exhibits introduced included the clothing worn by defendants at the time of their arrest and the weapons found. Defendants allege the purpose of the introduction of these exhibits was to inflame the passions of the jury. As authority, they cite several cases which are not on point as they deal with the question of admissibility of photographs of the body of the victim in homicide cases.

Since the photographs are not before us, we are unable to make any determination of the accuracy and propriety of what they purport to portray. There was testimony, however, that the photographs were taken within minutes of the robbery and discovery of the weapons. The question of their admissibility was one clearly within the discretion of the trial court. *Vavra v. State,* Okl.Cr., 509 P.2d 1379 (1973); *Snake v. State,* Okl.Cr., 453 P.2d 287 (1969). It is well settled that when a photograph is shown to be a faithful reproduction of whatever it purports to reproduce, it is admissible to aid the jury in applying the evidence irrespective of whether it relates to persons, places or things. *Walters v. State,* Okl.Cr., 455 P.2d 702 (1969); *Ashton v. State,* Okl.Cr., 478 P.2d 932 (1970); *Johnson v. State,* Okl.Cr., 478 P. 2d 969 (1970). In *King v. State,* Okl.Cr., 456 P.2d 121 (1969), cert. denied, 397 U.S. 1049, 90 S.Ct. 1384, 25 L.Ed.2d 663, we held that admitting photographs of the scene of a robbery was not an abuse of discretion.

■■ The other demonstrative evidence consisted of the clothing worn by defendants at the time of their arrest which matched the clothing described by the victims of the robbery. This clothing was admissible under our holding in *Hill v. State,* Okl.Cr., 456 P.2d 617 (1969), as evidence tending to connect the defendants with the crime. The admissibility of weapons, identified as being those used in the robbery, found at the scene of the crime and near the place where defendants were arrested, and the spent shells, is also clearly not an abuse of discretion. Accordingly, this assignment of error has no merit.

■ Defendants also contend there was reversible error in the prosecutor's closing argument wherein he stated that the evidence was "completely uncontradicted and unrefuted." Defendants contend this is a remark upon their failure to take the stand. We have repeatedly held that the prosecutor is entitled to refer to the evidence as uncontradicted and unrefuted as a

fair comment on the evidence, and that such comment does not prejudice defendant by calling attention to his failure to testify. See our recent holding in *Hair v. State,* Okl.Cr., 532 P.2d 72 (1975), and *Story v. State,* Okl.Cr., 478 P.2d 929 (1970).

■ The final assignment of error brought by the defendants, and one of the points raised by the counsel for defendants, will be considered together. Counsel contends that the punishment in this case is excessive, and the defendants in their pro se brief argue that there was prejudicial misconduct in closing argument by the prosecutor. The language complained of occurs at several places in the record. At page 159 we find:

"Number 2, hopefully, some other potential militant hyjacker in the community is going to read it and he is going to say, I am not going to pull those robberies in Oklahoma County because those people aren't going to tolerate them. They aren't going to put up with them. They are going to hand out stiff penalties.

"Number 3, as I say, I hope it will call to some others attention, that they will look twice at it and think someone was concerned about this enough to give this kind of a verdict that this had to be a hienous (sic) crime."

And, at page 160:

". . . I think this case deserves special attention, because of the professional manner in which it was carried out, the militant manner in which it was carried out, and the potential of what these men tried to do.

"The number of people they tried to kill. And, I think, if nothing else but for pure tokenism, if you will put on your verdict form we find these defendants guilty of robbery with firearms, and set their punishment at five hundred years, someone is going to look twice at it."

■ Defendants contend this language sufficiently appeals to the passion and prejudice of the jury to require reversal.

We do not agree. In view of the overwhelming evidence against defendants, such remarks by the prosecutor could have had little weight in a determination of guilt or innocence. However, the language urging to make these defendants an example could so inflame the jury as to increase the punishment set. While the prosecuting attorney is allowed a wide latitude of freedom of expression in his argument to the jury, he cannot go outside the record for the sole purpose of appealing to the passion of jurors. *Holcomb v. State*, 95 Okl. Cr. 55, 239 P.2d 806 (1952), and *Behley v. State,* Okl.Cr., 521 P.2d 418 (1974).

For the foregoing reasons we are of the opinion that since the defendants were not shown to have prior felony convictions, their sentences should be modified from two hundred and fifty (250) years' to Life imprisonment, and as so *modified* judgments and sentences are *affirmed*.