John Stanton GAMBLE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–548.

Court of Criminal Appeals of Oklahoma.

March 28, 1978.

Rehearing Denied April 18, 1978.

George Miskovsky, Sr., and Everett J. Sweeney, Miskovsky, Sullivan & Miskovsky, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Charles Helm, Legal Intern, for appellee.

## OPINION

CORNISH, Judge:

Appellant, John Stanton Gamble, hereinafter referred to as defendant, was charged in the District Court, Cleveland County, Case No. CRF–76–413, with the offense of Rape in the First Degree. The case was tried to a jury and a guilty verdict was returned. Punishment was assessed at five (5) years' imprisonment. From judgment and sentence defendant has perfected a timely appeal to this Court.

The prosecutrix testified, generally, that she met the defendant, and although married, agreed to date him. On the third date the defendant, the prosecutrix, and a married couple went to the defendant's apartment where they all drank wine. After the couple left, the prosecutrix asked the defendant to take her home and started toward the door, but the defendant grabbed her and shook her, stating that she was "not going to get away now." She then related how the defendant forced her to have sexual intercourse.

Other witnesses testified for the State and generally corroborated the testimony of the prosecutrix, some of which will be discussed in the individual assignments of error.

The defendant's account of how he met the prosecutrix and where they went on their three dates was essentially the same as the prosecutrix' testimony; however, while he admitted sexual petting, he denied having intercourse.

Defendant's first assignment of error urges that the prosecutrix' testimony was so unreliable, contradictory and unreasonable that corroboration, of which there was none, should have been required. See *Cape v. State,* 61 Okl.Cr. 173, 66 P.2d 959 (1937).

After carefully examining the testimony of the prosecutrix, we conclude that corroboration was not required. The various inconsistencies in the prosecutrix' testimony, which are pointed out by the defendant, are unpersuasive in this regard. As was stated in *McComas v. State,* 75 Okl.Cr. 321, 131 P.2d 488 (1942), to authorize rever-

sal of a conviction for rape on the grounds that the evidence is too inherently improbable to support a conviction, the improbability of the prosecutrix' testimony must arise from something other than just the question of her believability. The testimony must be of such contradictory and unsatisfactory nature, or the witness must be so thoroughly impeached, that the reviewing court must say that such testimony is clearly unworthy of belief and insufficient as a matter of law to sustain a conviction. In the present case, we cannot say that these conditions have been met.

■ However, a review of the record reveals that corroborative proof was introduced by the State in the form of the testimony of Mary Peters. Ms. Peters testified that she lived above defendant, and that in the early morning hours of July 18 she heard sounds emanating from defendant's bedroom, which was directly beneath her bedroom. Her testimony concerning this is reflected in the record as follows:

"A.  Well, it was late Saturday night, and I was awakened by loud voices coming from the downstairs apartment, and it was a man and a woman, and there was  .  .  .  well, it was screaming loud, and that is why I woke up.

"Q.  Could you tell me  .  .  .  could you hear the voices?

"A.  Yes.

"Q.  Okay.  What did you hear?

"A.  I can't remember that much, but— well, she was asking the man to leave her alone and  .  .  .  well, she kept pleading with him to leave her alone and .  . ..

"Q.  Okay.  What else did you hear?

\*     \*     \*     \*     \*     \*

"Q.  (by Mrs. Huff) What else was said by the man, if anything?

"A.  Okay.  Well, he just didn't say anything for the longest time, and she was saying, 'Leave me alone, John, leave me alone, quit  .  .  .  .' and it just kept on going like that.  She was just, you know, just pleading for him to leave her alone.

"Q.  Okay.  Did you hear anything else?

"A.  Well, what she kept on going .  . sometimes the voices got lower, and I couldn't hear that part, but I could hear her most of the time, and she was just .  .  .  well, she and just asking him to leave her alone, and to quit.  And she sounded real scared, and that is how I got so scared.

"Q.  Okay.  Can you tell me, did you ever hear the man say anything?

"A.  Yes.  He said something like, 'Don't tell me you are pregnant, or that you can get pregnant.'  And then she said something  .  .  .  she was saying something, but it was kind of muffled, then.  And he said, 'Don't give me any of that.' And  .  .  ..  I don't know.  And then she kept on saying it some more, and he said, 'Well, I am tired of all of this." And then  .  .  ..

"Q.  Okay.  Could you determine where these noises were coming from, or where the voices were  .  .  ..

"A.  Well, they were directly where I was; it was in the bedroom.

"Q.  You were in your bedroom?

"A.  Uh-huh.

"Q.  And where is Mr. Gamble's bedroom in relation to your bedroom?

"A.  It is just right below ours.

"Q.  Okay.  Could you recognize the man's voice?

"A.  Yes.

"Q.  Whose voice was it?

"A.  Mr. Gamble's."

The above excerpt corroborates the prosecutrix' testimony that at one point she told the defendant that she was pregnant in an effort to stop his advances.  She further testified that he said it did not matter to him.

Defendant also argues under his first assignment of error that the prosecutrix did not make reasonable resistance to defendant's advances, and that she therefore consented to sexual intercourse.

This Court has repeatedly held that a rape victim is not required to do more than her age, strength, surrounding facts, and all attending circumstances make it reasonable

for her to do in order to manifest her opposition. *Haury v. State,* Okl.Cr., 533 P.2d 991 (1975). In the instant case, there is ample testimony from which the jury could have found lack of consent, including the testimony of Mary Peters, above quoted. Furthermore, the defendant by his testimony in this case, set up a clearer question for the jury, that is, the defendant denied sexual intercourse, whereas the prosecutrix alleged involuntary sexual intercourse. On appeal, the defendant is now saying the third choice is "none of the above," that is, the evidence shows that if there was sexual intercourse it was voluntary. It is our opinion that the testimony presented to the jury under the above circumstances supports a finding beyond a reasonable doubt that there was sexual intercourse without consent.

■ Defendant's second assignment of error urges that the trial court erred in interjecting itself into the trial of the case by interposing its own objections and arguments. A review of the record reveals this to be true. The most frequent interjections came during the testimony of the prosecutrix, although they occurred throughout the course of the trial. Some of the court's objections and statements were well taken and some were not. We see no need, however, to burden this opinion with specific instances, because we are of the opinion that all comments and objections by the court, whether correct as a matter of law or not, were made in an honest effort to expedite the trial of this cause. Trial courts, however, are admonished to consider the language in *French v. State,* Okl.Cr., 397 P.2d 909, 913 (1964), as follows:

> "The Court would again remind all trial judges to project themselves into the trial of a criminal case as little as possible. They should remember that any action they take or remark they may make as judge, will carry greater weight with the jury than anything that is said or done by anyone else in the court room."

Defendant cites several instances wherein the court raised objections on its own motion, and in so doing verbally noted that defense counsel had either failed to object or had interposed a premature objection. At one point the court stated:

> ". . . I'm going to ask counsel. . . . I am going to order counsel to help me police the record in this case; I am getting tired of trying to do it alone."

Defendant asserts that this kind of comment reflected badly upon him, and further that the court was usurping the role of counsel. We note, however, that as to each instance specifically cited by defendant, the court's objections were entirely proper. Further, we do not feel that the court's comments directed at defense counsel's failure to object had the effect of casting defense counsel, and hence defendant, into disrepute. Lastly, although we discourage too much active participation in the trial by the judge, we note that herein the court more often interposed itself on behalf of the defendant and rarely interposed on behalf of the State. The foregoing considered, we are of the opinion that the court's actions were not such as to deny the defendant a fair trial.

■ Defendant's third assignment of error alleges that the trial court erred in failing to instruct on lesser included offenses. This contention is without merit. It is not error to fail to instruct on lesser included offenses when the evidence does not support such instructions. *Parrott v. State,* Okl.Cr., 522 P.2d 628 (1974). Herein, the State's case showed rape in the first degree and nothing else. Defendant's evidence indicated that he was not guilty of any crime. The instructions, which were limited solely to the offense of rape in the first degree, were therefore correct.

■ Defendant complains in his fourth assignment of error that the trial court improperly excluded certain evidence offered by defendant, to wit: A Playgirl Magazine, which defendant purchased for the prosecutrix; and a copy of a divorce petition wherein the prosecutrix was plaintiff.

Concerning the Playgirl Magazine, we note that the fact that defendant did indeed

buy it for the prosecutrix was brought to the jury's attention. Defendant's complaint is that the court did not permit the magazine itself to be introduced into evidence. Concerning its admission the court stated:

". . . The renewed offer of the magazine . . . the objection to the renewed offer of the magazine is sustained. "Ladies and Gentlemen of the jury, there is absolutely no dispute but what they bought a Playgirl magazine at the store. At this time, the uncontroverted evidence of everybody supports that conclusion. The only issue of dispute is—if there is a dispute—is the circumstances under whose idea was it that the magazine be bought, or relative to that. So, for that reason, the Court is sustaining the objection to the magazine which has no probative value to any issue in this case."

Defendant contends that this magazine, which contains color photographs of nude men, should have been given to the jury for their inspection, and that its usefulness lay in its ability to impeach the credibility of the prosecutrix. Defendant makes a similar argument concerning the introduction of the prosecutrix' prior divorce petition. He asserts that many of the allegations in the divorce petition are identical to the allegations which she made concerning the defendant herein, and that it was therefore useful to impeach the credibility of the prosecutrix. Once again, cross-examination of the prosecutrix concerning her divorce petition was permitted, but the petition itself, a 17 page document, was not allowed into evidence.

We are of the opinion that the trial court did not err in refusing to allow these exhibits into evidence. As defense counsel notes, these were collateral matters and were offered only to impeach the prosecutrix' credibility. While undoubtedly defendant has a right to cross-examine a witness with respect to collateral matters in order to impeach the witness' credibility, it is also true that the limits of such examination are within the discretion of the trial court, whose decision we will not reverse absent

an abuse thereof. See, *Bewley v. State,* Okl.Cr., 404 P.2d 39 (1965), and *Smith v. State,* Okl.Cr., 520 P.2d 816 (1974). In the present case, the jury was informed of the fact that the prosecutrix requested the magazine, and the trial judge correctly ruled that the magazine itself had no probative value to any issue before the jury.

As to the divorce petition, the prosecutrix admitted that the allegations in it were similar to those she was making against defendant. Defendant offered the petition itself as a more accurate recital of the allegations against her former husband. The court rejected the exhibit as superfluous in view of the fact that the prosecutrix had already admitted that she had made similar allegations. Defendant's attorney stated that he offered it to impeach her credibility.

■ The divorce petition and the magazine, or any inquiry concerning them, were collateral matters. As stated above, the extent to which defendant can cross-examine concerning collateral matters, with a view towards impeachment, is within the discretion of the trial court. In view of the foregoing, we cannot say that the trial court abused its discretion in allowing cross-examination concerning the exhibits, or that it abused its discretion by denying admission into evidence of the exhibits themselves.

■ Defendant contends in his fifth assignment of error that the prosecutrix continually refused to answer the questions asked, and instead continually volunteered surplus commentary. As a result of her refusal to properly testify, the trial court admonished her to answer only the question asked. Defense counsel was compelled to make continual objections and motions for mistrial. Generally, defendant's objections were sustained; however, each and every motion for mistrial was denied. Defendant assigns the denial of his motions for mistrial as error and urges that the nonresponsiveness of the prosecutrix had the effect of denying him a fair trial.

We observe first that in almost all instances of alleged nonresponsiveness, the court sustained defendant's objections. In fact, several times the court interposed its own objections and once dismissed the jury to admonish the witness.

Defendant cites no authority wherein it was specifically held that a continual course of nonresponsiveness is reversible error. In Oklahoma, alleged nonresponsiveness of a witness has most often arisen in the area of the so-called "evidentiary harpoon"—that is, situations where a witness, usually a police officer, volunteers information concerning other offenses involving the defendant. See, *Pierce v. State,* 96 Okl.Cr. 276, 253 P.2d 194 (1953), and *Mathis v. State,* Okl.Cr., 553 P.2d 525 (1976). In support of its contention that no error occurred, the State cites *Aderhold v. Stewart,* 172 Okl. 72, 46 P.2d 340 (1935), a civil case involving personal injuries wherein the plaintiff broke down and cried on the stand, and had to be carried therefrom. The Oklahoma Supreme Court held that in such instance a motion for mistrial would be addressed to the sound discretion of the trial court.

We are of the opinion that the rule cited by the State must apply here as well. The nonresponsiveness of the witness in the present case did not result in the admission of any nonadmissible evidence, such as evidence of other crimes. Further, as we view the record, some of the alleged nonresponsiveness resulted from an overinsistence by the court and defense counsel that the witness strictly answer questions put to her. Such preciseness of language generally cannot be expected from a lay person, and the failure to obtain it does not constitute error.

Lastly, the court often sustained defendant's objections and often gave admonishments to the jury and to the witness. We are therefore of the opinion that the decision to grant a mistrial on account of the misbehavior of the witness is best left in the hands of the trial judge, who had a better opportunity than this Court to judge the alleged misbehavior of the witness. Considering the above and upon careful review of the record, we are of the opinion that no abuse of discretion occurred. Defendant's fifth assignment of error is therefore without merit.

■ The sixth assignment of error is that the trial court erred in allowing the first day of trial to continue until 10:00 p. m. At 6:30 p. m., prior to the dinner break, defense counsel moved for a continuance until the following morning, which motion was denied.

In *Bingham v. State,* 82 Okl.Cr. 5, 165 P.2d 646 (1946), we considered a similar issue and stated in the eighth paragraph of the Syllabus, as follows:

"Time of convening and recessing court is ordinarily a matter resting in sound discretion of trial judge and action of judge in holding night session of court will not be considered improper unless there is a clear showing that defendant was prejudiced by such action."

We hold that defendant has failed to meet that burden. In support of his assignment of error, he merely states that at 6:30 p. m. he was already at the point of "diligent, but nonetheless total exhaustion"; and further, that the jury could not do a fair job of evaluating the evidence at such a late hour.

In regard to these contentions, we note that defense counsel does not assert that between the hours of 6:30 and 10:30 p. m. he was so tired that he did not properly defend his client. Indeed, such a contention could not reasonably be made as defense counsel did a commendable job throughout the course of the trial.

Further, we do not feel that defendant's chances for a fair trial were prejudiced because of the alleged exhaustion of the jurors. No juror made such a complaint, and although they heard evidence that evening, their deliberations did not commence until the following day. The foregoing considered, we are of the opinion that no error occurred.

■ Defendant's final contention is that the trial court erred in overruling his motion to quash the jury panel, duly made and

**1190**

argued prior to swearing the jury. The basis for the motion was two-fold. First, that various signs had been placed where they could be clearly visible to all entering the courthouse, which stated: "Victims-Witnesses for the State report downstairs"; "Victims-Witnesses report to the D.A.'s office"; and "District Attorney's Victim-Witness Center." Secondly, that certain pamphlets entitled "Issues in Crime and Justice" with a cover drawing depicting a prison door, handcuffs, a lock, a key and a pistol were placed in close proximity to the register where potential jurors checked in.

Defendant asserts that the pamphlets and the signs had the effect of destroying the presumption of innocence guaranteed by 22 O.S.1971, § 836, and substituting therefor a presumption of guilt, at least in the minds of the potential jurors.

Title 22 O.S.1971, § 633, provides:

"A challenge to the panel can be founded only on a material departure from the forms prescribed by law, in respect to the drawing and return of the jury, or on the intentional omission of the sheriff to summon one or more of the jurors drawn, from which the defendant has suffered material prejudice."

We are of the opinion that the defendant has failed to show that there was "a material departure from the forms prescribed by law, in respect to the drawing" of the panel. Furthermore, defendant has not proven that he was prejudiced; again, a burden which he carries. See, *Maddox v. State,* 12 Okl.Cr. 462, 158 P. 883 (1916). Whether or not a prospective juror became prejudiced after observing the signs and pamphlets so as to render him partial to the State was a question to be resolved during voir dire. Such partiality on the part of an individual juror, if it could be established, is a ground for challenging that juror and not the whole panel. See, *Lunday v. State,* 50 Okl.Cr. 431, 298 P. 1054 (1931). Defendant's final contention is without merit.

For the foregoing reasons the judgment and sentence is *AFFIRMED.*

BUSSEY, P. J., and BRETT, J., concur.