**Ricky Don BRYANT, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–77–809.**

Court of Criminal Appeals of Oklahoma.

Oct. 11, 1978.

Cal Hoover, Melson & Hoover, Ada, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., H. Lee Schmidt, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

The decision of this Court was first rendered in this appeal on June 27, 1978. Thereafter, within the time limit set by the Rules of this Court, appellant filed his petition for rehearing. On July 17, 1978, the initial decision was withdrawn and the following decision is filed in lieu of the original.

Appellant, Ricky Don Bryant, hereinafter referred to as defendant, was charged in the District Court, Seminole County, Case No. CRF–77–29, with the offense of Burglary in the Second Degree in violation of 21 O.S.1971, § 1435, After Former Conviction of a Felony, 21 O.S.Supp.1977, § 51. The case was tried to a jury, and a guilty verdict was returned. Punishment was assessed at fifteen (15) years' imprisonment. From judgment and sentence defendant has perfected an appeal to this Court.

The first witness was Joy Blanton who stated that she and her husband lived in a mobile home in a rural area outside of Seminole. On the morning of January 3, 1977, when she and her husband left for work, all was intact. At about 2:30 p. m. she was called by her mother, and as a result of that call she returned home. There, she observed that the rear door to her home had been pried open. However, nothing had been stolen.

Ed Lowe testified that he worked for an oil company and that on the date in question he and Randy Whelan, a co-worker, were checking an oil well near the Blanton residence. Mr. Lowe testified that when they first arrived at the well site they observed a white over maroon automobile in the Blanton driveway, which he knew did not belong to them. Further, when he first observed the car he could not see anyone about. Subsequently, as they unlocked the gate to the oil lease, the strange car was driven down the Blanton driveway and stopped in the vicinity of the witness. The driver of the car, identified as the defendant, got out and asked several questions concerning whether it would be all right to hunt in the area. The witness replied that he did not know, and Randy Whelan stated that the land across the road from the Blanton's belonged to Sid Morgan and that defendant would have to check with him. The witness testified that at this point the defendant stated he had already been to the Morgan home (which the witness stated was visible from where they stood and towards which Randy Whelan gestured), and there was no one home. The defendant then left, and the witness and Whelan completed their work on the oil well within five minutes. They drove over to the Blanton home and observed that the back door was partially open, whereupon they immediately drove to Mrs. Blanton's mother's house and informed her of what they had observed. Subsequently, the police were called, and the witness returned to the Blanton home where on closer inspection it was discovered that the back door had been pried open.

Randy Whelan's testimony was substantially identical to that of Ed Lowe.

Sid Morgan was next to testify. He stated that he lived near the Blantons and that on the date in question when he arrived home from work at about 4:30 p. m. he received a telephone call from Mrs. Blanton, advising him that her home had been burglarized. Mr. Morgan then checked his property and noted that three chain saws and some tools were missing from his garage. Subsequently, he went to the Blanton's home and told Deputy Sisco of this. The witness testified that two of the chain saws were later recovered, but the witness did not know the source.

Kenneth Sanford stated that he knew the Blantons and lived about a mile from their home. On the date in question about 4:00 p. m., he was driving out of his driveway when he observed the defendant, in a white over brown automobile, driving onto his property. The witness confronted the defendant, who stated he was lost. The witness also stated that his driveway is kind of an extension of a gravel county road and that the road terminates at his home. He further stated that his home had not been broken into, and that he is generally suspicious of persons on that road whom he does not know. The witness also obtained the license tag number from the defendant's car.

Deputy Sisco investigated the break-in at the Blanton residence, the subject of the present case. He observed where defendant's vehicle had been parked and also several footprints which seemed to lead from the car to the mobile home and back. These were photographed. Similar footprints were later observed by him at Sid Morgan's residence, and these too were photographed. All photographs were introduced into evidence.

Deputy Sisco further testified that defendant's home was searched pursuant to a warrant, but that nothing incriminating was found. Also, when defendant learned that his home had been searched, he voluntarily turned himself in. The defendant, when interviewed by officers, admitted having been at the Blanton residence and stated that he was looking for a place to hunt. He also denied knowledge of any burglaries; however, Deputy Sisco stated that the defendant offered to assist in other cases for consideration in this case.

Wanda Sue Ivey testified that on December 27, 1976, at about noon she returned to her home near Konawa and discovered that it had been burglarized. Several guns were missing.

Larry Kennedy stated that on December 27, 1976, shortly before noon he passed by the Ivey residence and observed a maroon colored car nearby and a person walking, apparently from the garage. Several minutes later, he observed the same car a short distance away at his wife's service station. He could not identify the defendant as the driver of that car, however, there was a resemblance. Mr. Kennedy took the car's tag number and gave it to Mrs. Ivey.

Seminole County Deputy Sheriff Colbert, the last witness for the State, testified as to his investigation.

The defendant and his wife testified in his behalf. The defendant admitted being at the Blanton home but denied stopping at the Morgan's. He also denied telling Randy Whelan and Ed Lowe that he had been there. He further stated that he did not remember the incident with Mr. Stanton and denied being at the Ivey home on December 27. He also stated that he did not own shoes with soles matching those in the photographs. The defendant admitted convictions for burglary and maiming. He admitted owning the car in question and stated that he was actually looking for a place to hunt squirrels on January 2. When he knocked on the door of the Blanton's mobile home, he did not notice anything wrong with it.

Defendant's first assignment of error complains of the admission of evidence of other crimes. The subject case involves the break-in at the Blanton residence on January 3, 1977. The State was also permitted to prove, as noted above and over defendant's objections, that several chain saws and some tools had been stolen from Sid Morgan's garage on that same date, and that defendant's car and a person resembling the

defendant had been seen at the Ivey home shortly before it was discovered to have been burglarized. Defendant also complains of the testimony of Larry Kennedy, who testified that he saw the defendant near his home on January 3. Strictly speaking of course, Mr. Kennedy's testimony did not involve other crimes, since no crime was committed.

Evidence of other crimes, though generally inadmissible, is admissible to prove intent, identity, motive, absence of mistake, and common scheme or plan embracing both crimes such that proof of one tends to establish the other. Evidence of other crimes is not, however, merely admissible to show that the defendant has a propensity to commit crime. *Roulston v. State,* Okl.Cr., 307 P.2d 861 (1957).

There is really only one factual question in this case and that is the question of identity. Was the defendant the person who pried open the door to the Blanton Mobile home? There is no doubt that defendant was on the scene and had an opportunity to do so. The State's proof was irrefutable in this regard, and the defendant admitted from the stand that he was at the scene. But how to prove it is the question.

The State proposes that since they have evidence that defendant was involved in two other burglaries an inference therefore arises that the defendant was guilty.

It is entirely impermissible to show totally unrelated crimes committed by a defendant in order to show that he has a propensity to commit crime. Although establishing such propensity would raise an inference that defendant, who admittedly had the opportunity, was the person who broke into the Blanton home, it is the kind of inference which the law prohibits.

But, urges the State, there is more. The two other burglaries were not just other crimes totally unrelated to the one charged, but rather they were part of a "common scheme or plan," and that, therefore, as established by case law, it was entirely permissible to reason that if defendant committed one crime he must have committed them all. See, 22A C.J.S. Criminal Law § 684.

Examining the evidence, we observe that the Ivey burglary occurred a week prior to the crime charged herein and at a considerable distance therefrom. On the other hand, the Morgan burglary occurred on the same date and in proximity. The State also contends that the method of operation used in each burglary was similar. It is true that each was a daylight burglary of a rural residence, however, these facts alone are not enough to show common scheme or plan. Mere similarity of offenses is not enough. *Atnip v. State,* Okl.Cr., 564 P.2d 660 (1977). But, the State urges, there is still more. The defendant would approach a house and use a pretext of looking for a place to hunt if there were someone about and, if not, he would "rip it off."

It is true that the State's evidence showed that the defendant told the two oilfield workers, Whelan and Lowe, that he approached the Blanton residence in order to ask permission to hunt and also that the defendant told them he had been to the Morgan residence for the same purpose. However, this was not shown with regard to the burglary of the Ivey residence.

In *Roulston v. State,* supra, it is stated that the court may allow testimony of the commission of crimes other than the one charged if so related in character, time and place of the commission that it tends to support the conclusion that there was a plan or system which embraced both. Such was not shown in this case as to all alleged burglaries.

For his third assignment of error, defendant asserts that the trial court erred in allowing the State to inject prejudicial and inflammatory statements during the final argument. In reviewing the closing argument of Assistant District Attorney Butner, notwithstanding the fact that much of what was said was objectionable, we find that defense counsel offered no objections. It is the general rule that the prosecutor may make any reasonable inference from

the evidence, but he should confine his argument to the evidence offered at trial. " 'The prosecuting attorney should not express his private opinion as to defendant's guilt . . . but . . . may state his conclusion based on the evidence.' " *Young v. State,* Okl.Cr., 373 P.2d 273, 280 (1962). In this case, the Assistant District Attorney tended to express his personal opinion. He stated, "That's why Ricky Don Bryant is guilty. He's guilty also—he's guilty for the simple reason also Ladies and Gentlemen of the jury, that this is a common scheme of his." While the Assistant District Attorney intended to confine his remarks to what he believed the evidence to show, he failed to expressly state such as the basis for his comments.

■ When the District Attorney made his final closing argument, he went outside the record. Defense counsel objected and moved for a mistrial. The objection and motion were both overruled, but the District Attorney was instructed to go no further. Nonetheless, the comment of the District Attorney was completely outside the record when he attempted to drag into the instant trial evidence of defendant's conviction for the crime of maiming. On cross-examination, the Assistant District Attorney did inquire into defendant's conviction for maiming, but only as to the fact of conviction. In closing, the District Attorney said, "This man is no respector of people. A little boy at a ballgame. He was convicted in a court where I was one of the District Attorneys and he beat this little boy until his eye went out." This comment was highly prejudicial and was offered only to prejudice the jury and constituted reversible error. It is highly impermissible for the prosecutor to go outside the record for the purpose of appealing to the passions and prejudices of the jury. *Sykes v. State,* 95 Okl.Cr. 14, 238 P.2d 834 (1951); *Polk v. State,* Okl.Cr., 561 P.2d 558 (1977). We agree with the Attorney General's statement in his brief, "The general rule is that the prosecutor has the right to discuss fully from his standpoint, the evidences and inferences and deductions which may reasonably be drawn from the evidence presented at trial, *Ford v. State,* Okl.Cr., 532 P.2d 89 (1975)." And, when he states further, "The right of such argument contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide, *McDonald v. State,* Okl.Cr., 553 P.2d 171 (1976)." However, that right does not permit the prosecutor to go back into another trial and drag up evidence from former convictions to bolster his argument when such was not evidence at the instant trial.

In *Mattingly v. State,* Okl.Cr., 527 P.2d 24, 25 (1974), when the prosecutor went outside the record in an inflammatory manner, this Court stated:

> "This argument was highly improper and the defense counsel's objection should have been sustained and the jury advised to disregard it. While we are constantly stating that counsel for the State and defendant should be given great latitude and a wide freedom of expression in presenting their arguments, still we find that argument in the instant case goes outside of the record and is so prejudicial as to require reversal.
>
> "A person accused of a crime is entitled to a fair and impartial trial conducted according to established principles of law, the most important of which is, the verdict of the jury should be founded only upon competent evidence. If the defendant cannot be fairly convicted, he should not be convicted at all, and to hold otherwise would provide ways and means for the conviction of the innocent.
>
> "We do not believe that the errors complained of can be cured by simply modifying the judgment and sentence rendered against the defendant. He was effectively denied a fair and impartial trial as guaranteed to him by the Constitution of the United States, and the State of Oklahoma. . . ."

See also, *Fry v. State,* 91 Okl.Cr. 326, 218 P.2d 643 (1950), and *Hill v. State,* 76 Okl.Cr. 371, 137 P.2d 261 (1943).

Therefore, for the foregoing reasons this conviction must be, and is, REVERSED and

REMANDED for a new trial in order that the defendant may receive a fair trial in accordance with due process of law.

BUSSEY, P. J., concurs in results.

CORNISH, J., dissents and would modify sentence to seven and one-half (7½) years.