George GREEN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–78–523.

Court of Criminal Appeals of Oklahoma.

May 13, 1980.

Kevin J. Murphy, Ponca City, for appellant.

Jan Eric Cartwright, Atty. Gen., William S. Flanagan, Asst. Atty. Gen., Andrew Wilcoxen, Legal Intern, for appellee.

## OPINION

CORNISH, Presiding Judge:

The 52-year-old appellant was convicted of Rape in the First Degree in the District Court of Kay County, Case No. CRF–77–234. Punishment was set at fifty (50) years' imprisonment.

The incident giving rise to this appeal occurred on Thanksgiving Day, November 25, 1977. The prosecutrix was living with her two small children while her husband was working out of state. The appellant, a former co-employee of her husband, lived in a garage apartment behind the residence of the prosecutrix. About 4:30 p. m. he went to her house where they talked and watched television.

The prosecutrix testified that the appellant, who had been drinking, made advances toward her during the course of the evening. She testified this was offensive to her, but she nevertheless allowed the appellant to remain in her company. About 11:30 p. m. after the children were put in bed, the appellant demanded sex with the prosecutrix. When she resisted, she was hit several times, her sweater ripped, and her bra and jeans torn. Fearing further harm, the prosecutrix did not scream for help and, in fact, she pulled her jeans and pants down when told to do so by the appellant. After being raped twice, the prosecutrix dressed herself and her children and walked to the police station.

## I

The first question for consideration is whether the District Attorney's comments in closing argument erroneously made reference to the appellant's failure to testify. The applicable statute, 22 O.S.1971, § 701,[1] provides that a defendant's failure to testify shall not be mentioned at trial, but if commented upon by counsel is a ground for a new trial. The prosecutor's statements complained of in this appeal are:

". . . Mr. Murphy said the case is so weak that it doesn't merit a defense. Well, I told you and I promised you when I got up here that I would argue and answer their defense. I haven't heard their defense. Haven't heard any defense. The only thing that I have heard from them is, 'Well, there wasn't any force used.' Or, 'She submitted with consent,' or 'She put herself in a bad situation where he could take advantage of her.' Haven't heard any defense yet."

Later, discussing the discrepancy in the testimony as to when the prosecutrix left her house and walked to the police station, the prosecutor told the jury the "time specifically is within the grasp of the defendant, if he wanted you to know exactly when she went to the police station, but he didn't want to tell you that."

▮ It is well settled in Oklahoma that it is permissible for a prosecutor to say that the evidence presented by the State is uncontradicted and unrefuted, *Coots v. State*, Okl.Cr., 560 P.2d 592 (1977); *Bennett v. State*, Okl.Cr., 546 P.2d 659, *cert. denied*, 426 U.S. 940, 96 S.Ct. 2658, 49 L.Ed.2d 392 (1976). Comment on reasonable inferences drawn from the failure of the defense to contradict the State's evidence is also allowed, *McDonald v. State*, Okl.Cr., 553 P.2d 171 (1976). However, it is error for the prosecutor to comment, either directly or indirectly at any stage of the trial, upon a defendant's failure to take the stand. *Runnels v. State*, Okl.Cr., 562 P.2d 932 (1977).

▮ We have carefully reviewed the closing arguments of both parties. We think the statement by the prosecutor that he had not heard any defense may be considered analogous to a comment that the evidence was uncontradicted and was, therefore, permissible. When the challenged remarks are read in context, they appear to be a comment on the defense counsel's closing argument rather than on the appellant's failure to take the stand.

▮ On the other hand, the statement that the appellant was able but unwilling to tell the jury when the prosecutrix went to the police station is unquestionably not within the scope of permissible comment. However, we fail to see how this statement was prejudicial because the defense counsel had remarked earlier in his closing argument, "I assure you that it was on my advice and my assistance that Mr. Green did not testify today."

## II

The appellant next alleges that the prosecutor's remarks during closing argument pertaining to the failure of the prosecutrix to make an outcry assumed facts not in evidence and were so inflammatory as to deny the appellant a fair trial. The complained of argument, to which defense counsel objected at trial, is as follows:

". . . I don't think that any of you would have run out of that house and *left your two children* there with that defendant in the house. She didn't make an outcry. How much of an outcry can you get out before somebody *really clobbers you*, and at midnight on Thanksgiving Day, who is going to hear you? How many of you would have thought of making an outcry at that point? You know, it's not a question of you making an

1. Title 22 O.S.1971, § 701, provides:

"In the trial of all indictments, informations, complaints and other proceedings against persons charged with the commission of a crime, offense or misdemeanor before any court or committing magistrate in this State, the person charged shall at his own request, but not otherwise, be a competent witness, and his failure to make such request shall not create any presumption against him nor be mentioned on the trial; if commented upon by counsel it shall be ground for a new trial."

outcry, and then beating it out of the house because you still *have the two children there.* You have got *to make an outcry and defend yourself* until help comes, until a neighbor gets there. Everyone of you at sometime or another in your life have been sitting in your house and thought you heard somebody scream. You have heard an unusual noise outside, and you say, 'What is that?' And you listen to see if it happens again, and it didn't happen again. And you may even have thought about it for awhile, the rest of that evening, until the morning papers came out and you could check the papers to see if something happened to your neighbor. That has happened to every one of you. So if she had cried out and her neighbor, the closest one across the street,—no, well, the closest one had a driveway between and he was to the next door, one way or the other, but they were at work. The closest practical neighbors were across the street. If she had made her cry out, and if they had of heard her, if they had happened to still have been up watching television and not asleep already, and if their windows were open and their air conditioner was not on, and they would have heard her and they would have said, 'What's that?'—And then not heard anything else because she would have *been out cold or dead* at that point, and the neighbor never would have come for help. And presuming that this was an alert neighbor sitting on his front porch watching the stars come up, and he immediately dashed across the street, how much help is going to get to her before he *takes that step or two to close the distance between them and does a job on her? Or snatches up one of the babies as a hostage.*" (Emphasis added)

■ This Court agrees with the State that it is the general rule that the right of argument contemplates a liberal freedom of speech and that the range of argumentation is wide. Hence, both sides may discuss fully from their standpoints the evidence and inferences and deductions arising therefrom. *Deason v. State*, Okl.Cr., 576 P.2d 778 (1978), and *Battle v. State*, Okl.Cr., 478 P.2d 1005 (1970). However, that right does not permit the prosecutor to bolster his argument by implications which are unsupported by competent evidence offered at trial. *Bryant v. State*, Okl.Cr., 585 P.2d 377 (1978).

■ We find the closing argument in the instant case was outside the record and was prejudicial. There is no evidence that the appellant threatened to kill or harm the prosecutrix if she screamed. Nor does the record reflect that the appellant intended to injure or hold hostage the victim's two and three-year-old children. It was highly impermissible for the prosecutor to go outside the record for the purpose of appealing to the passions and prejudices of the jury, *Polk v. State*, Okl.Cr., 561 P.2d 558 (1977). Still, in light of the evidence, the improper remarks cannot be said to have determined the verdict.

### III

■ Refusal to give the appellant's requested instructions numbers 1, 2, 3, 5 and 6 is the penultimate error alleged on appeal.[2]

2. The requested instructions were:

"NO. 1
"The Defendant would be justified in assuming the existence of consent if the conduct of the Prosecutrix toward him at the time of the occurrence is of such a nature as to create in his mind an honest and reasonable belief that she has consented by yielding her will freely to the commission of the act.
"NO. 2
"Although the Prosecutrix may have objected verbally to the act of intercourse, yet if she by her conduct consented to it, the act is not rape.

"NO. 3
"A voluntary submission by a woman, while she has power to resist, no matter how reluctantly yielded, amounts to consent and results in an act which is not rape.
"NO. 5
"The jury may consider evidence of the failure of the Prosecutrix to make outcry, where others are in the vicinity and an outcry would be possible, should be considered in determining the question of consent, for evidence of the failure of the female to make an outcry tends to show that she consented to the intercourse. However, if the offense occurs in a

The appellant correctly argues that he is entitled to any instructions on his theory of defense, provided such theory is tenable as a matter of law, or finds support in the evidence. *Gann v. State*, Okl.Cr., 397 P.2d 686 (1964). He insists that the trial court's instruction No. 6[3] did not focus on issues pertaining to consent, such as feigned resistance, verbal resistance contradicting conduct, or the submission of the prosecutrix while she had the power to resist. From a careful reading of the transcript, we find little evidence to bolster the appellant's argument relating to the requested instructions. There is no evidence that the prosecutrix gave her affirmative consent. Nor does the fact of torn clothing and bruises about the body of the prosecutrix lend support to the appellant's argument.

■ It is well settled that the instructions to be given the jury are left to the trial court's discretion. His judgment will not be interfered with as long as the instructions, when considered as a whole, fairly and accurately state the applicable law. *Batie v. State*, Okl.Cr., 545 P.2d 797 (1976). So be it in this case. We find no abuse of discretion.

## IV

■ The final assignment of error concerns the sufficiency of the evidence and the excessiveness of the sentence imposed. Relying heavily on *Reid v. State*, Okl.Cr., 290 P.2d 775 (1955), the appellant alleges that the evidence was insufficient to sustain the conviction because the element of force was not proven. That case involved the alleged rape of a 14-year-old girl by a 21-year-old male. We there found insufficient evidence of resistance of the defendant's advances to sustain a conviction of rape in the first degree, and the judgment was modified to second degree rape. However, *Reid* is distinguishable because in that case there was no detail of any struggle by the prosecutrix to get away and no black marks or bruises on her body. In the instant case, there was medical testimony concerning bruises on the prosecutrix's body; the torn sweater, bra and pants worn by her were found at the scene by the investigating officers and produced at trial. No evidence was put forth by the defense to refute these indicia of force.

In *Gamble v. State*, Okl.Cr., 576 P.2d 1184 (1978), this Court stated that to authorize reversal of a rape conviction because the evidence is too inherently improbable, the improbability of the prosecutrix' testimony must arise from something other than the question of her believability:

"The testimony must be of such contradictory and unsatisfactory nature, or the witness must be so thoroughly impeached, that the reviewing court must say that such testimony is clearly unworthy of belief and insufficient as a matter of law to sustain a conviction. . . ."

We hold these conditions have not been met in the present case.

place so remote from all human help that all outcry must be [unavailing], it is not necessary that the Prosecutrix have made an outcry for help for the law does not require the doing of impossible or useless acts.
"NO. 6
"You, the jury, may further consider any delay on the part of the Prosecutrix in making a complaint is a circumstance which tends to show consent by her to the act, to be taken into consideration upon other surrounding circumstances in the case."

**3.** The trial court's Instruction No. 6 stated:
"You are instructed on the question of resistence [sic] upon the part of the prosecutrix toward the commission of the act of sexual intercourse with her by the defendant, if you should first find from the evidence and beyond a reasonable doubt that such act was committed by the defendant by means of force, overcoming her resistance [sic], or by means of threats of immediate and great bodily harm accompanied by apparent power of execution preventing such resistence [sic], without her consent and against her will, that the said [prosecutrix] was, by law, required to resist such force to the best of her ability. The resistence [sic] required by law depends upon the circumstances of each particular case, and in determining whether she did resist to the best of her ability, you may take into consideration her age, strength, surrounding facts and circumstances at the time in evidence before you."

Having carefully reviewed the record before us, we find the evidence of guilt is clear and convincing and does not warrant reversal or a new trial. However, we find the jury may have been unduly swayed to return a more severe penalty than they otherwise would have given due to the improper closing argument. The judgment and sentence will therefore be *MODIFIED* from fifty (50) years to thirty (30) years' imprisonment.

BRETT, J., concurs.

BUSSEY, J., concurs in part and dissents in part.

BUSSEY, Judge, concurring in part, dissenting in part.

I am in accord with the affirmance of the conviction but disagree that the closing argument requires modification. Much of the complained of argument was made in response to defense counsel's argument and emphasis on the failure of the prosecutrix to make an outcry, or flee her attacker. I believe that this was within the scope of permissible closing argument and did not tend in any way to inflame the jury against the defendant. Moreover, much of the argument was made without objection and was accordingly not preserved for review on appeal.