Gary Dean SUTTON, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–85–470.

Court of Criminal Appeals of Oklahoma.

Aug. 12, 1988.

Lisbeth L. McCarty, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Gary Dean Sutton, was convicted in the District Court of LeFlore County Case No. CRF–84–254 of the crime of Rape in the First Degree in violation of 21 O.S.1981, § 1114. He was sentenced to a term of five (5) years' imprisonment, and appeals.

Testimony at trial concerned the gang-rape of a seventeen-year-old girl, ("L.A."), by the twenty-nine year old appellant and one other man, Frank Baxter. Prior to the incident in question, L.A. had dated the appellant and admitted voluntarily having sexual intercourse with him on three (3) prior occasions. On October 25, 1984, L.A. accepted a ride with the appellant and his two cousins. The three men were drinking. A short time after they picked L.A. up, the appellant announced to his cousins that L.A. agreed to a "gang-bang". She denied this, and one of the men insisted on being let out if she was reluctant.

After dropping the one cousin off at a local bar, where the appellant's father also happened to be,[1] the trio again left on a drive through the local countryside. During the course of this drive, the appellant and Baxter continually attempted to grope at L.A.'s body; threatening to drown her in the nearby Arkansas River if she kept refusing to cooperate.

At one point, Baxter pulled his pickup off to the side of the dirt road and attempted, with appellant's assistance, to force L.A. to have intercourse with the men in the cab of the pickup. When she resisted, appellant beat the girl with his fists, hitting her at least twice in the temple, and once in the eye. Seeing the damage done to the girl, Baxter again suggested drowning L.A. in the river because he "didn't need no trouble."

Baxter then drove further into the country, and turned into a field, where their pickup became stuck in a mudhole. He told appellant and L.A. to get out and push the truck, which they did. Once the pickup was safely out of the water, Baxter and appellant forced L.A. to remove her clothing on the pretext of drying it out. Baxter then forced L.A. to orally sodomize him while appellant raped her.

After this episode, Baxter drove the trio to appellant's house, where he again forced L.A. to perform oral sodomy and appellant made an unsuccessful attempt at another rape. Then, because appellant's younger brother and a friend had unexpectedly stopped by, L.A. was permitted to walk out of the house. She went to a nearby house where the occupant allowed her to call her mother for help.

After L.A.'s mother arrived, and they were in the neighbor's kitchen, appellant and Baxter arrived. The men told L.A. and her mother that if they reported the incident to the police, both would be killed. Baxter and appellant then left. L.A. and her parents did report the incident, and L.A. was taken to a nearby hospital where her wounds were treated. She was given a physical examination, and a "rape kit" was collected. An expert witness testified that from his analysis of the samples collected from L.A.'s body at the hospital, he determined that the semen that was found matched the appellant's blood grouping and could have come from the appellant.

The appellant did not testify, but several witnesses were called on his behalf. His cousin, and co-defendant, testified to a completely different account of the events of that day. According to Baxter, L.A. was a

---

1. The appellant told his father, Ray Sutton, about the men's plans with L.A., and even invited him to come along. L.A. again made her reluctance known by asking the senior Sutton to take her home at that time. Ray Sutton jokingly refused, telling his son "to go on and do what you're going to do."

willing and eager participant in the activities of October 25. He attempted to convince the jury that the entire episode was L.A.'s idea. Other witnesses who had seen the group at various times during that day testified that L.A. did not appear to be an unwilling companion to the two men. The appellant's father testified that, when he saw the group at the bar that afternoon, L.A. did not ask him for a ride but, instead, grinned when his son invited him to join in on the anticipated "gang-bang". Although all of the witnesses testifying for the defense generally agree with the theory that L.A. was not being held against her will, all had minor inconsistencies in their recollection of the various conversations that had taken place. Ray Sutton, the appellant's father, is the most striking example. His account of the conversation he had with his son, the appellant, differs from the accounts of all of the witnesses who also heard the conversation.

█ As the appellant's first assignment of error, he argues that prosecutorial misconduct deprived him of a fair trial. The primary thrust of the argument on this assignment is that the closing arguments were highly improper and prejudicial because the prosecutor suggested that the appellant's defense witnesses were liars. *See, e.g., Dupree v. State,* 514 P.2d 425 (Okl.Cr.1973); *Ray v. State,* 510 P.2d 1395 (Okl.Cr.1973). We agree with the appellant's basic premise: that this type of behavior is unacceptable, but we are unable to find evidence in this record that supports his argument.

The prosecutor correctly pointed out to the jury that all or nearly all, of the witnesses for the defense were relatives of the appellant. Those that were not related testified that they were friends with the appellant. This line of argumentation, in our opinion, merely points out the possible bias harbored by the witnesses. From our reading of the record, we are convinced that the prosecutor made no attempt to impose his personal beliefs on the jury.

█ The rule that liberal freedom of speech and a wide range of discussion is proper during closing arguments is elementary, and should not require repetition. *See Mahorney v. State,* 664 P.2d 1042 (Okl. Cr.1983); *Robson v. State,* 611 P.2d 1135 (Okl.Cr.1980). Rather than being personal attacks against the defense witnesses, the arguments presented were simply the prosecutor's views of reasonable and logical inferences that the jury could make from the testimony presented. There is no error here.

█ Next, the appellant attempts to persuade us that the jury verdict was the product of court-imposed coercion. This argument is based on the fact that the jury deliberated for four hours, was unable to agree on a verdict, and was only able to finally reach a verdict after being called back and asked if further deliberations would be helpful. The jury was not given an *Allen* charge.

We disagree with the appellant's conclusion that the verdict was coerced. This Court has refused to reverse convictions in cases where the jury had to deliberate for much longer periods. *See e.g., Roubideaux v. State,* 707 P.2d 35 (Okl.Cr.1985). Here, there is absolutely no evidence of jury coercion. This assignment has no merit.

█ The appellant's third assignment of error is that he was denied effective assistance of counsel.[2] Here, too, the record is absolutely devoid of any hint that the appellant's counsel was ineffective or that the appellant was prejudiced by any tactic or act of his defense counsel. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) *reh. den.* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.

---

**2.** The basis for this claim of ineffective assistance of counsel appears to be two-fold. First, counsel on appeal suggests that counsel at trial was ineffective because he was not successful in obtaining a change of venue. This issue was fully argued to the trial court and we will not disturb its ruling here. *Walker v. State,* 723

P.2d 273 (Okl.Cr.1986). Second, appellant suggests that counsel was ineffective for not pursuing his allegations that the prosecuting attorney was persecuting him for filing a civil suit. These baseless allegations have no relevance to the crime the appellant now stands convicted of, and deserve no further mention here.

2d 864. *See also Blankenship v. State,* 719 P.2d 829 (Okl.Cr.1986). The lack of foundation for this claim is highlighted when we recognize the fact that counsel was especially effective by successfully convincing the jury to impose the minimum sentence and ignore the appellant's previous felony convictions. Because the record shows that counsel's performance does not come close to failing either prong of the *Strickland* test, we are forced to conclude that there is no good faith basis for this assignment and that it is totally frivolous and without merit.

As his fourth assignment, the appellant argues that the trial court erred in failing to give the standard corroboration instruction to the jury, *see* O.U.J.I.—CR 841 (1981), and his second requested instruction regarding L.A.'s truth and veracity. The appellant cites no authority in support of his argument that a veracity instruction should have been given. This portion of the assignment is waived. *See Rushing v. State,* 676 P.2d 842 (Okl.Cr. 1984).

The authority the appellant cites in favor of his proposal that a corroboration instruction should have been given does not, in reality, support his position on appeal. These cases all stand for the proposition that a corroboration instruction is required only when the complaining witness' testimony is "of such contradictory and unsatisfactory nature, or the witness [has been] so thoroughly impeached, that the reviewing court must say that such testimony is clearly unworthy of belief ..." *Gamble v. State,* 576 P.2d 1184, 1185 (Okl. Cr.1978). *See also DeArmond v. State,* 285 P.2d 236 (Okl.Cr.1955). We agree with the trial judge that there was no inherent incredibility in L.A.'s testimony, nor had she been thoroughly impeached. This assignment of error has no merit.

The fifth assignment of error that the appellant raises is that the trial court erred when it ordered him to submit to a blood test. This assignment is based on the appellant's belief that such a test, performed four days prior to trial, constitutes an unreasonable search and seizure. *See*

*Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Here however, the appellant has failed to show how the sampling in this case is unreasonable. Further, we believe that this issue has long been settled in Oklahoma. *See Cole v. Parr,* 595 P.2d 1349 (Okl.Cr.1979). This assignment of error is without merit.

As his last two assignments of error, the appellant states that there was insufficient evidence to support his conviction and that cumulative errors denied him a fair trial. In light of the conclusions we have reached on the assignments already discussed, the appellant's statement that cumulative errors denied him a fair trial is clearly without merit. We also believe that there was sufficient evidence to support the verdict in this case.

The proper test for evaluating a sufficiency of the evidence claim is now well known and need not be repeated, verbatim, here. *See Spuehler v. State,* 709 P.2d 202, 203–4 (Okl.Cr.1985). The only true issue at trial was whether L.A. had consented to the acts of October 25. The appellant does not deny that he had intercourse with her that day, nor does he deny beating her with his fists; he only states that she was a willing and eager participant. Reviewing the evidence in the light most favorable to the prosecution, there was clearly sufficient evidence presented from which any rational trier-of-fact could find all of the elements of the crime charged. This assignment has no merit.

Accordingly, the judgment and sentence is AFFIRMED.

BRETT, P.J., and PARKS, J., concur.